JOHN J. HOGAN, executor, & another, *vs.* HEIRS OF MARY ROCHE.

Middlesex.    March 13, 1901. — September 14, 1901.

Present: HOLMES, C. J., KNOWLTON, MORTON, LATHROP, BARKER, HAMMOND, & LORING, JJ.

*Evidence,* Opinion, Cross-examination.

On the issue of the soundness of mind of a testatrix, each of four witnesses was asked whether he or she, during the time mentioned, observed in the testatrix "any peculiarity of manner, speech or conduct." The witnesses answered "No" or "Never." *Held,* that the question did not call for an opinion but for a fact, and was admissible.

On the issue of the soundness of mind of a testatrix, a witness for the contestants testified to peculiar actions of the testatrix. It had appeared in evidence that six years before the date of the will, the testatrix made a present of $1,000 to a son of the witness. On cross-examination the witness was asked "Do you think that at that time — did you at that time think that the testatrix had sufficient mental capacity to give that money to your son?" He answered "I suppose she had." Another witness, who had testified to peculiar actions of the testatrix, was asked on cross-examination about a certain remark made to the witness by the testatrix, and was then asked "Do you think she knew what she was about when she said that?" and answered "I don't know," and then being asked "What is your opinion?" answered "I think she was all right at that time." To the further question "Did you think at that time she knew what she was talking about?" the witness answered "I think she did," and to the question "Do you think so now?" gave an affirmative answer. *Held,* that in spite

of the rule that a witness, who is not an expert or a subscribing witness to the will, is not allowed to give his opinion as to the soundness of mind of a testator, the questions put in this case afforded the contestants no ground for exception; that the whole object of the questions was to show how the testatrix appeared to the witnesses at the times in question and thus to show the improbability of the previous statements made by the witnesses, and that for this purpose the cross-examination was legitimate, although the result might have been reached in a less questionable manner.

When evidence admissible for one purpose is inadmissible for another, upon which it would have a bearing if not excluded by rules of law, it must be assumed that a justice passing upon the facts considers it only upon those issues which it legitimately affects. Thus expressions of opinion as to the sanity of a testator at the time he did certain acts, admitted on cross-examination for the purpose of showing the improbability of the statements made by the same witnesses on their direct examinations, will be assumed to have been taken into account, by the justice who allowed the will, only so far as they tended to contradict premises seeming to lead to a different conclusion, and not as evidence tending in itself to establish sanity.

On the issue of the soundness of mind of a testatrix who had been a domestic servant, a niece of the testatrix who was a servant in the same house testified as a witness for the contestants to many peculiar actions of the testatrix, and as to her using disrespectful language in the presence of her employer and disobeying his orders. She was asked on cross-examination " Did you ever hear Dr. G. find any fault with your aunt during all the time you were there, and if so, what did-he say ? " The question was admitted for the purpose of contradicting the story told by the witness on her direct examination. The witness in answer testified to a number of times when the employer had found fault with the testatrix. *Held,* that the question was admissible.

APPEAL from a decree made by *Lawton*, J., in the Probate Court for the county of Middlesex, disallowing the will of Mary Roche, late of Lowell, on the ground that at the time of making it she was not of sound mind. Petition filed February 25, 1898.

The case was heard on appeal by *Loring*, J., who reversed the decree of the Probate Court and admitted the will to probate. The contestants alleged exceptions to the admission of certain evidence which are stated in the opinion of the court.

The case was argued at the bar in March, 1901, and afterwards was submitted on briefs to all the justices.

*W. H. Bent*, for the contestants.

*G. F. Richardson*, (*J. J. Hogan* with him,) for the appellants.

LATHROP, J. The exceptions in this case relate entirely to the admission of evidence. The question before the justice was whether Mary Roche at the time she executed the instrument propounded as her will was of sound mind. As is usual in such cases evidence was put in, as bearing on this question, as to the

condition of the testatrix both before and after the making of the will.

The first four exceptions may be considered together, as they relate practically to the same question put to four witnesses who testified in support of the will. It was in substance whether he or she, during a time mentioned, observed in the testatrix "any peculiarity of manner, speech or conduct." The witnesses answered "No," or "Never." The question did not call for an opinion but for a fact, and was clearly admissible. See *Clark* v. *Clark*, 168 Mass. 523, 526, 527, and cases cited.

The remaining exceptions relate to questions allowed to be put on cross-examination to witnesses for the contestants.

Michael J. Welch, the husband of one of the contestants, testified in their behalf. It appeared that the will was executed on January 25, 1898, and that the testatrix died on the sixteenth of the following month. It also appeared that in 1892, the testatrix had made a present of $1,000 to a minor son of Michael; that at this time Michael was absent, and did not know of the fact until some months later. It further appeared in evidence that a few months after the gift the son gave to the testatrix a certain paper writing, wherein it was stated that the testatrix gave the said sum of $1,000 and all her furniture in consideration that he should board and "room" her during the term of her natural life. This instrument was not signed or executed.

Michael testified at the trial in behalf of the contestants, among other things, as to the peculiar actions of the testatrix, and was asked, on cross-examination, "Do you think that at that time — did you at that time think that Mary Roche had sufficient mental capacity to give that money to your son?" He answered, "I suppose she had."

Bridget Welch, a sister of the testatrix and one of the contestants, on direct examination testified to various peculiar actions of the testatrix. She was asked, on cross-examination, the following question: "She said something at some time about your — you will have enough to bury you with you don't know what I am keeping for you did she?" To this question she answered, "Yes." She was then asked: "Do you think she knew what she was about when she said that?" The answer was, "I don't know." Then this question was put: "What is

your opinion?" She answered, "I think she was all right at that time." She was then asked: "Did you think at that time she knew what she was talking about?" The answer was, "I think she did." She also gave an affirmative answer to the question, "Do you think so now?"

The general rule is that a witness of the class to which these witnesses belonged is not allowed to give his opinion as to the soundness of mind of a testator. *Commonwealth* v. *Brayman*, 136 Mass. 438, 440. *Cowles* v. *Merchants*, 140 Mass. 377. *Smith* v. *Smith*, 157 Mass. 389, 390. *Clark* v. *Clark, ubi supra.*

But we are of opinion that the questions put in this case afford the contestants no ground of exception. Both witnesses had testified to many facts tending to show that the testatrix was of unsound mind. The object of the cross-examination was to show by the first witness that his conduct was inconsistent with his testimony. If the witness at that time had dealt with the testatrix as a person fit for business, that fact would have been admissible as a circumstance to be considered in connection with others. *Bonnemort* v. *Gill,* 165 Mass. 493. The fact that he did not know of the gift to the son until later, is of no particular significance. There is nothing in the exceptions to show how long it was before the gift was made that the witness left the city. The witness was not asked to give an opinion, but what he thought at that time about the mental capacity of the testatrix to make a gift.

There can be no objection to any of the questions put to Bridget Welch except the one calling for her opinion when a certain remark was alleged to have been made by the testatrix. But the whole object of the questions was to show how the testatrix appeared to the witness at the time in question, and thus to show the improbability of the previous statements made by the witness. For this purpose we are of opinion that the cross-examination was legitimate, though it is apparent that the result might have been reached in a less questionable manner.

When evidence admissible for one purpose is inadmissible for another upon which it would have some bearing apart from the rules of law, it must be assumed that the tribunal of fact considers it only upon those issues which it legitimately affects. In this case it must be assumed that the judge took these expres-

sions of opinion into account only so far as they tended to contradict premises seeming to lead to a different conclusion, and not as evidence tending in itself to establish sanity.

The remaining question relates to the admission of a question put to the witness Dacey. This witness was a niece of the testatrix, and a daughter of Michael J. Welch. She went to Dr. Greene's in 1880, and was there for a year and a half, while the testatrix was a servant there. She testified to many peculiar actions of the testatrix, particularly during the last six years of her life. She also testified to the testatrix's using language towards Dr. Greene which would naturally call for remonstrance on his part, and to her disobeying his orders. This question was put to the witness on cross-examination: "Did you ever hear Dr. Greene find any fault with your aunt during all the time you were there, and if so, what did he say?" The question was admitted for the purpose of contradicting the story told by this witness on her direct examination. The witness then testified to a number of times when Dr. Greene found fault with the testatrix. We are of opinion that the question was clearly admissible.

In the opinion of a majority of the court, the order must be

*Exceptions overruled.*