GEORGE M. McCOY & another, executors, *vs.* L. STEWART JORDAN.

Norfolk.   December 7, 1903. — January 6, 1904.

Present: KNOWLTON, C. J., MORTON, LATHROP, BARKER, & LORING, JJ.

*Will.   Evidence.   Practice, Civil.   Rules of Court.*

On the issue of the sanity of a testator, the contestant of the will contended that the testator was of unsound mind by reason of senile dementia, a progressive disease which continued to the time of his death. The will was executed in April, 1895. The testator died in September, 1898. The judge of the Superior Court, before whom the issues of fact were tried, fixed January 1, 1897, as the time up to which witnesses might testify in regard to the testator's appearance, conduct and apparent condition. No objection to this was made by either party. The contestant asked the attending physician of what disease the testator died. The judge excluded the question. *Held,* that the exclusion was right, and that it was not the duty of the judge to receive the evidence merely because an expert would testify that in his opinion it had some significance.

On the issue of the soundness of mind of a testator, a witness not an expert cannot be asked the question "From these facts what did you infer in your own mind as to Mr. J's [the testator's] mental capacity?"

On the issue of the soundness of mind of a testator a witness not an expert can be asked whether he noticed any failure of memory and whether he ever noticed anything to indicate that the testator was not of sound mind. Such a witness also may be asked whether he noticed any failure of intelligence on the part of the testator and whether the testator's memory was good or bad, if the questions are limited by the judge to observations of external manifestations and are so answered.

On the issue of the soundness of mind of a testator, a witness not an expert cannot be allowed to testify that the testator's "powers seemed to be complete and perfect" nor that so far as the witness remembered each time he saw the testator he "should say that he was in the possession of clear faculties and mental powers."

Rule 48 of the Superior Court, that "when further instructions are given in the absence of counsel after the jury have retired, the presiding justice may permit exceptions thereto at any time within twenty-four hours next following", is reasonable, and is binding on the parties to an action. Where instructions are so given on a legal holiday which falls on a Friday and the court does not convene again until the following Monday an exception to these instructions taken on the last named day cannot be allowed.

Under R. L. c. 166, § 5, c. 158, § 4, a presiding judge may give further instructions to a jury on a legal holiday.

Where the circumstances attending the return of a verdict were such as to raise a doubt whether it was unanimous, but the jurors by their foreman had signed the verdict and it was affirmed, all the jurors assenting to it although one of them said that he did so under protest, there was held to be no error of law on the part of the presiding judge in refusing to treat the verdict as illegally received and recorded.

APPEAL from a decree of the Probate Court for the County of Suffolk allowing the will of William H. S. Jordan.

The case was sent to the Superior Court for trial of the following issues: "1. Was the instrument offered for probate by the said executors, dated April 11, 1895, duly executed as and for the will of the said W. H. S. Jordan? 2. Was the said W. H. S. Jordan of sound and disposing mind and memory at the time of the execution of said instrument? 3. Was the said instrument purporting to be the last will and testament of the said W. H. S. Jordan procured by the fraud or undue influence of George M. McCoy?"

At the trial of the issues before *Sherman*, J., the jury found for the executors on all the issues in the manner stated in the opinion. The contestant alleged exceptions. In allowing the first bill of exceptions the judge made the following statement: "I allow the exception taken by the appellant on Monday forenoon, June 2d, after the verdict, if in the exercise of my discretion under the circumstances described, I am empowered to do so by Rule 48 of the Superior Court. With this reservation the foregoing bill of exceptions is allowed."

There also was a supplemental bill of exceptions. The questions raised by both bills of exceptions appear in the opinion.

*G. L. Huntress & S. L. Whipple*, for the contestant.

*R. M. Morse*, for the executors.

KNOWLTON, C. J. The first question to be considered upon these bills of exceptions is whether there was error of law in the admission or exclusion of evidence.

At the time of his death in September, 1898, the testator was about eighty-four years of age. The will in question was executed in April, 1895. It was contended by the appellant that he was not then of sound mind, but was afflicted with senile dementia, a progressive disease, which continued to the time of his death. Without objection by either party, the court fixed January 1, 1897, as the time up to which witnesses might testify of their observation of him in regard to his appearance and conduct and apparent condition. The determination of the question how far subsequently a party may go for testimony to show a person's mental condition at a given time, must be left very largely to the discretion of the presiding judge, and there is

nothing to indicate that this discretion was not wisely exercised in the present case. *Shailer* v. *Bumstead*, 99 Mass. 112, 130. *Commonwealth* v. *Pomeroy*, 117 Mass. 143, 148. *Lane* v. *Moore*, 151 Mass. 87, 90. The appellant asked the attending physician to testify of what disease the testator died. The question was excluded and the appellant excepted. This question related to the condition of the testator more than a year and a half after the date by which the testimony of other witnesses as to his condition was limited, and nearly three years and a half after the execution of the will. The admissibility of the evidence was urged at the trial on the ground that it would be a foundation for expert testimony tending to show, from his condition at the time of his death, that this progressive disease was upon him and made him of unsound mind at the time of the execution of the will. We are of opinion that the testimony was rightly excluded. It was not the duty of the judge to receive it merely because an expert would testify that in his opinion it had some significance.

The other questions of evidence involve a consideration of the rule as to testimony of witnesses not experts in regard to the mental condition of a testator. The rule in this Commonwealth differs from that in some places, but it has long been well established, and this court has repeatedly refused to change it. Such witnesses are not permitted to give their opinion in regard to the mental condition of one whose sanity is called in question. *May* v. *Bradlee*, 127 Mass. 414. *McConnell* v. *Wildes*, 153 Mass. 487. *Smith* v. *Smith*, 157 Mass. 389. *Clark* v. *Clark*, 168 Mass. 523. Good reasons can be given for and against the rule, which we need not now consider.

In the practical application of it, difficulties are encountered when we attempt to draw the line between facts which indicate a mental condition, and a statement of the condition itself, and especially when we try to discriminate between facts given by way of description, which necessarily involve in their statement more or less of opinion as to familiar objects and well known matters, and the inferences and deductions from these facts, which take the form of direct opinion as to the mental condition of the person. An exception to the ordinary rule that witnesses cannot give their opinions in testimony allows them to state their judgment

and estimate as to many things, such as the size, weight or color of objects, and the measurement of time or space. *Commonwealth* v. *O'Brien*, 134 Mass. 198. *Commonwealth* v. *Sturtivant*, 117 Mass. 122, 133. *O'Neil* v. *Hanscom*, 175 Mass. 313. Questions to such witnesses, bearing upon the mental condition of a testator, should be so framed as to call for facts and not for opinions. These facts, involving a narration and description of appearances and conduct and conditions may be such as cannot be given without including some element of opinion that comes within the exception stated above. A witness may properly be asked if he has observed any facts that have relation to the subject upon which information is sought. Such a question can usually be answered by "yes" or "no." If he answers in the affirmative, he may be asked to state what he observed. If the purpose is to prove a negative, the question may be so framed as to direct the attention of the witness to his observation as to peculiarities of speech or manner or conduct, or anything else indicating an unusual mental condition.

The question of the appellant to Mrs. French, "From these facts . . . what did you infer in your own mind as to Mr. Jordan's mental capacity?" was rightly excluded. It called directly for the inference and opinion of the witness as to the testator's mental capacity. The questions put by the executor, "Whether you noticed any failure of memory?" "Did you ever notice anything to indicate that he was not of sound mind?" were competent. They directed the attention of the witness to what he had noticed by way of external indications in regard to an internal condition, and they were put for the purpose of proving a negative. The question to Goodrich, "Whether or not you noticed any failure of intelligence on his [the testator's] part?" and the question to Hall, "Whether his memory was good or bad?" might be interpreted as calling for nothing but observation of external manifestations. It would be possible to interpret them as calling for an opinion as to the testator's mental condition. It would be easy for a judge directing the course of a trial to deal with such questions by requiring modification or explanation, or otherwise, in such a way as to preserve the rights of the parties, and leave no doubt as to the competency of the testimony admitted. The answers to these questions in the pres-

ent case show that the inquiries were treated as calling for the observation of the witness, and in each answer the witness referred to what he had seen. There was no error in admitting the testimony as given in the answers. *Barker* v. *Comins*, 110 Mass. 477, 487. *Nash* v. *Hunt*, 116 Mass. 237.

One Middleton was asked, " When you last saw Mr. Jordan, what facts did you observe as to his powers of comprehension, mental grasp, coherency, power of reasoning, memory, intelligence, will and accuracy ? " A similar question was put to one Kelly. The first witness answered, " His powers seemed to be complete and perfect." The second witness answered, " So far as I remember, each time that I saw Mr. Jordan I should say that he was in the possession of clear faculties and mental powers." These questions called only for the facts observed by the witnesses in reference to a stated subject. Neither of the answers was responsive. Neither witness stated anything that he had observed, but each volunteered a statement of his opinion as to the testator's condition of mind. It is hardly possible to conceive of a statement more directly presenting such an opinion than each of these answers. The appellant objected to each of the answers and moved that it be stricken out. The judge admitted them and the appellant excepted. There is no case in this Commonwealth that is a precedent for the ruling. The great reluctance of this court to set aside a verdict on account of the admission or rejection of some piece of evidence of slight importance, when it seems improbable that a different ruling would have changed the result, has often led to an adoption of the interpretation of the presiding judge when there is doubt as to the construction that should be put upon the testimony in reference to its competency. This has often been illustrated when it was uncertain whether the witness was giving an account of external indications, or a statement of his opinion as to a mental condition. In the present case there is no room for such doubt, and we are of opinion that the evidence ought not to have been admitted.

The appellant contends that there was error in the proceedings, after the case had been given to the jury. After the jury had been in deliberation about twenty hours, they were sent for by the presiding judge, and without a request for further in-

structions, were given the instructions which appear in the record. They were told, in substance, that if they should conclude that there were some things in the working out of this will which might be unjust, they could not compromise it and say how it should be decided, as in an ordinary civil case, but that they must answer the questions, yes or no. The judge then suggested to them that if that should be their opinion, after having come to a decision upon the issues, there would be no objection to their stating in writing their recommendation as to what should be done by the parties by way of working a remedy for such injustice. The subject was presented to the jury pretty fully by the judge, who said, among other things, " The parties themselves would not be bound to carry out your suggestions, and perhaps the court could not, but possibly coming from the jury who had heard the whole case it might be of value and useful to the parties in working out what you regard as more even and adequate justice." This was on Friday, May 30, a legal holiday. None of the counsel engaged in the trial was in court when these suggestions were made. The court did not convene again until the following Monday. The jury continued their deliberations for about six hours and a half, and then apparently agreed upon a verdict for the executors, which they sealed up in accordance with the directions of the judge and brought into court the next Monday. The sealed envelope containing the verdict signed by the foreman, which was passed to the clerk when the jury assembled, contained also a paper of considerable length which recited that they were unable to arrive at a unanimous verdict, and that there was one juror, naming him, " who from the preponderance of the evidence in his mind, could not join in the verdict except upon protest." It then referred to the instructions of the judge in regard to submitting plans and propositions to be handed to the contestants, " if possible to enable them to arrive at some amicable settlement of the controversy without further recourse to the courts," and requested that the document be attached to the verdict and remain a part of it, and stated a proposition in four parts, for settling the estate, by a material change of the provisions of the will. This paper was unsigned, but was in the handwriting of one of the jurors. The envelope was opened by the clerk and the papers

were exhibited to the court. The issues and answers were read to the jury, and when the usual question was put by the clerk to the jury as to the issues, the foreman answered to each, " We do "; but to the second and third, one of the jurors answered at the same time, " Under protest." That part of the second paper which stated the proposition for settlement was then read to the jury by the clerk, but the introductory part was not read. Upon its being read, no juror dissented. The judge then addressed the jury, thanking them for their service, and referring to their recommendations, which he said he understood to be the unanimous result of all their judgments (to which they all nodded assent), and told them that the suggestions would be conveyed to the parties who would have a right to take them and act upon them. He then excused the jury from further consideration of the case. At this point the juror who had answered, " Under protest," inquired of the judge whether, if the case was not settled in that way, the verdict would stand as a disagreement of the jury. The judge answered in the negative, with a brief explanation, when the juror began to make further statements, which the judge interrupted, declining to hear anything more at that time. On Monday forenoon the counsel for the appellant asked that an exception be noted to the instructions given on the preceding Friday. A question is reserved by the presiding judge in his certificate as to whether the exception taken on Monday forenoon could be allowed under Rule 48 of the Superior Court. An affidavit was made by the juror who answered " Under protest," in reference to his understanding of the verdict and the accompanying paper, in which he stated his purpose to say, when he was interrupted by the judge, that he dissented from the verdict. The appellant filed a " motion to make the record conform to the facts," asking the judge to expunge the answers of the jury to the issues and to record a disagreement of the jury. Upon the facts presented at the hearing of this motion, the appellant asked the judge to rule that there was no unanimous verdict, and that the record should be corrected by recording a disagreement of the jury. To the refusal so to rule he excepted.

On this part of the case the first question is whether the exception to the instructions given on Friday, May 30, was properly taken by a request made before noon on June 2. Rule 48 of the

Superior Court is as follows: "When further instructions are given in the absence of counsel after the jury have retired, the presiding justice may permit exceptions thereto at any time within twenty-four hours next following." The court has power to instruct juries in the absence of counsel, and if the parties or their counsel fail to attend they might, if it were not for such a rule, lose their right to except to the instructions so given. *Kullberg* v. *O'Donnell*, 158 Mass. 405. *Rainger* v. *Boston Mutual Life Association*, 167 Mass. 109. *Tim* v. *Rosenfeld*, 168 Mass. 393. This rule of the Superior Court is reasonable, and should be held binding upon parties. Twenty-four hours after the instructions were given had elapsed on Saturday at ten o'clock in the forenoon, and the exception was not taken until nearly noon of the following Monday. We are of opinion, therefore, that this exception was not properly saved, and that it could not be allowed.

On the proceedings stated in the supplemental bill of exceptions, the validity of the verdict is called in question. Upon this question the instructions and their probable effect, the formal verdict, the accompanying paper, and the proceedings in court when the verdict was received, are all to be considered. There is no doubt of the power of the court to instruct the jury on a legal holiday or in the absence of counsel. R. L. c. 166, § 5; c. 158, § 4. *Kullberg* v. *O'Donnell*, 158 Mass. 405. The instruction given was unusual in kind, going considerably further in its suggestions of an inducement for an agreement than *Commonwealth* v. *Tuey*, 8 Cush. 1, which is often referred to in practice. The trial in the present case was a very long and important one, and it was right for the presiding judge to do everything that he properly could under the rules of law to assist the jury in coming to an agreement. There was nothing incorrect in the instructions given, and in the form of statement of the subject to which they related they were carefully guarded. But they were a voluntary presentation of a matter which was entirely outside of the issues to be decided, and they naturally would have a tendency to divert the attention of the jury from the real question which they were to decide. There is reason to fear from the language of the paper accompanying the verdict, that there was a misunderstanding of the probable effect of the

paper on the part of some of the jurors.  Without any inaccuracy in the statement of the presiding judge, some of the jurors may have been led to attach greater importance to their recommendation than it deserved, and to yield formal acquiescence in the verdict, while at the same time reciting in the paper that the jury were "unable to arrive at a unanimous verdict."  The protest of one of the jurors when the verdict was received is significant, and it is impossible to know whether he would not immediately have declined to agree to the verdict, while the jury were before the judge and they were speaking of the case, if he had been permitted to speak further.  We are by no means certain that there was a unanimous verdict of the jury, so obtained and so received as properly to be given effect.

But looking more narrowly at the questions raised by the supplemental bill of exceptions, we discover no error of law in the refusal to change the record and to treat the result as a disagreement.  The jurors by their foreman had signed the verdict, it was affirmed, all the jurors assenting to it, although one said that he did it under protest.  The judge was not bound to continue a colloquy with the juror after the verdict had been recorded.  While the language of the accompanying paper and the conduct of the juror might well cause misgivings in regard to the verdict, there was no error of law in declining to treat it as illegally received and recorded.  This exception is overruled, but by reason of error in the admission of evidence, the entry will be,

*Exceptions sustained.*