JOSEPH STONE, executor, *vs.* AMOS STONE.

Suffolk. March 7, 8, 1906. — April 3, 1906.

Present: KNOWLTON, C. J., MORTON, LATHROP, LORING, & BRALEY, JJ.

*Practice, Civil,* Exceptions, Conduct of trial. *Evidence,* Admissions, Circumstantial. *Executor and Administrator. Accord and Satisfaction. Payment.*

If a presiding judge in prescribing the order in which evidence shall be admitted temporarily excludes competent evidence the party offering the evidence has no ground for exception unless he offers it again.

At the trial of an action by the surviving executor under a will on a witnessed demand promissory note of a brother of the testator, not living at the time of the trial, for $20,000, payable to the testator, dated more than fifteen years before the bringing of the action, where the defences set up are that the note was a part of a colorable transaction to protect the maker of the note from threatened proceedings against him by his wife, or that it had been paid or satisfied and had been kept by the plaintiff's testator either through an accidental omission to return it or in order to protect the maker from anticipated proceedings by his wife, the defendant may put in evidence the declarations of a deceased co-executor of the plaintiff, who was the confidential clerk of the plaintiff's testator up to the time of his death, made while as co-executor of the plaintiff she was at work upon the inventory, that the note for $20,000 had no value, that she was surprised that it had been kept, that the testator never would have collected it, that there would be trouble if it was found, and that in some way it was kept as a protection for the maker.

At the trial of an action by the executor under the will of his father on a witnessed demand promissory note of a brother of the testator, not living at the time of

the trial, for $20,000, payable to the testator, dated more than fifteen years before the bringing of the action, where it appeared that no interest or principal ever had been paid on the note and the defendant sought to show by circumstantial evidence that the note had been satisfied, the defendant offered to prove that in less than a month after the date of the note the maker conveyed by a release to the plaintiff's testator real estate worth from $17,000 to $18,000, and that about the same time the maker transferred certain shares of stock in a corporation to the plaintiff's testator who afterwards received for them certain railroad bonds which the testator sold for about $8,000. The evidence was excluded by the judge as not sufficiently connected by an express agreement with the payment of the note. The defendant then asked the plaintiff this question : " Can you show from your investigation of your father's affairs anything that would be a payment for this release and for the bonds which you received unless it was the payment of the note in question ? " The plaintiff answered " No." The judge ordered the testimony stricken out on the ground that the question was argumentative. *Held,* that the fact that the conveyance of the real estate and the transfer of the shares of stock were not paid for otherwise than by the discharge of the note was material to the defendant's case, that the question was not argumentative, and that the question and answer should have been admitted as well as the evidence of the conveyance and the transfer on which they were founded.

At the trial of an action by the surviving executor under the will of his father on a witnessed demand promissory note of a brother of the testator, not living at the time of the trial, for $20,000, payable to the testator, dated more than fifteen years before the bringing of the action, where it appears that no interest or principal ever was paid on the note, that the action was brought four years after the death of the plaintiff's testator, and three months after the death of the testator's confidential clerk, who was co-executor with the plaintiff, and that the note was not included in the inventory of the testator's estate, and there is evidence that when the action was brought the mind of the maker had failed, the administrator of the estate of the maker of the note, admitted to defend the action, has the right to prove by circumstantial evidence that the note was paid or satisfied soon after it was made, and to explain why it was not destroyed when it was paid, and for this purpose may introduce evidence that the note was given to " protect " the maker from anticipated claims upon him by his wife and that within a month of its date it was paid or satisfied by a conveyance of real estate and a transfer of shares of stock made by the maker to the plaintiff's testator and consequently that no interest or principal ever was paid on it, that the maker was a rich man, that he and the plaintiff's testator after the date of the note had ten accountings, and that he and the plaintiff, after the plaintiff knew of the note, had two accountings, in all of which the note was not mentioned, that after the note was given the plaintiff's testator made from time to time payments in cash to the maker of the note on his own account amounting to about $4,500, and on account of a bank amounting to about $10,000 more, and that the note was found with old diaries in a drawer which was used indiscriminately by the plaintiff's testator, the maker of the note and the deceased co-executor of the plaintiff, the testator's confidential clerk.

CONTRACT by the surviving executor under the will of Phineas J. Stone, who died on August 12, 1891. Writ dated June 11, 1895.

The declaration originally contained three counts, but the third count was stricken from the declaration by agreement. The first count sought to recover $5,000 and interest on an unwitnessed note dated November 17, 1879, payable three months after date. The defendant pleaded the statute of limitations, and on this count *Hardy*, J. in the Superior Court found for the defendant.

The second count sought to recover $20,000 and interest on an alleged note of the defendant Stone dated January 15, 1880, payable to P. J. Stone, or order, on demand, with interest payable semi-annually, no rate of interest being named, and purporting to have been witnessed by Francis Lewis. In the Superior Court the case was tried before *Hardy*, J., without a jury, upon an auditor's report and oral testimony. The defendant denied that the plaintiff was the rightful possessor of the note at the time the action was brought so as to be entitled to any presumption or benefit from its production or possession.

The chief controversies were as to evidence of payment or satisfaction of the note. The auditor had excluded much evidence offered by the defendant and made various rulings, and the judge confirmed and followed the rulings of the auditor as to the exclusion of evidence offered by the defendant and the auditor's ruling that there was no evidence of payment or satisfaction.

The defendant contended that, if the plaintiff was the proper possessor of the $20,000 note in question, it originally was given as part of a colorable or straw transaction to protect Amos Stone, the defendant, from threatened proceedings against him by his wife; and that Phineas J. Stone, the payee of the note, sympathized with and desired to help Amos, who was his brother; or that, if valid at its inception, after its proper payment or satisfaction, the note was kept by the payee either through an accidental omission to return it to Amos when paid or satisfied, or as a colorable claim to protect Amos from such anticipated proceedings by his wife; and the counsel for the defendant offered to show declarations of Amos to this effect. At the time of the trial Amos Stone, the defendant, was dead and the administrator of his estate had been admitted to defend the action.

Evidence was offered by the defendant that the relations of

Amos and his wife were unfriendly before the date of the note. The judge said that this evidence unless connected with the transaction of the note was immaterial and ruled as follows: " I will exclude the evidence so far as it has been offered at the present time. I will wait till the rest of the evidence comes." The defendant excepted to this ruling. The character of other evidence offered by the defendant and excluded by the judge which is material to the exceptions appears from statements in the opinion.

The defendant asked for nine rulings, the one numbered seven apparently having been withdrawn.

The judge made the following rulings as requested:

" 3. That if a note or notes were given in renewal of the $20,000 note in question and this renewal note was not produced or accounted for, the plaintiff cannot recover on this note.

" 4. That if the notes were found in a receptacle used jointly or in common by Phineas and Amos Stone, or by them with others, the plaintiff is entitled to no rights or presumption from offering the note until he has proven his rightful and proper possession and ownership thereof.

" 5. Lapse of time although less than the statutory period of limitations taken in connection with the circumstances of the case is evidence of payment."

" 10. If the witness to a witnessed note is not proved to have affixed his signature as witness at the request of the maker of the note nothing else appearing, the note cannot be recovered upon after the statutory period of six years applicable to un-witnessed notes."

The judge refused to make the following rulings:

" 1. That on all the evidence the plaintiff is not entitled to recover.

" 2. That on the whole case there is evidence of payment or satisfaction of the $20,000 note in question."

" 6. The presumption of payment will arise from a production of evidence of the payment of a later debt, or from the passing of some money or obligations between debtor and creditor after the debt is due."

" 8. That the stating and settling of accounts between Phineas and Amos Stone at frequent intervals after the making of the

note in question, raises a presumption that all matters had been adjusted between them.

" 9. That if the $20,000 note in question was found with old diaries and disused papers, and other articles in a drawer, which a number of persons used, and to which others had access, this. raises a presumption that the notes had been paid or satisfied, or had ceased to have, if ever they had, any value."

On the second count, to which the above rulings and the exceptions relate, the judge found for the plaintiff in the sum of $50,476.67 ; and the defendant alleged exceptions.

*A. F. Means,* (*G. F. Tucker* with him,) for the defendant.

*T. Hunt,* (*F. M. Forbush* with him,) for the plaintiff.

LORING, J.   We are of opinion that in this case there was a mistrial before the auditor as well as before the court.   The auditor in our opinion was wrong in excluding evidence offered by the defendant.   In place of asking to have the case recommitted to the auditor on this ground the defendant, at the trial before the court, offered the evidence excluded by the auditor. The judge followed the rulings of the auditor.

1. Evidence of the unfriendly relations between Amos and his wife was competent.   The defences set up were, in the words of the bill of exceptions, that the note " was originally given as part of a colorable or straw transaction to protect Amos Stone from threatened proceedings against him by his wife ; and that Phineas sympathized with and desired to help Amos ; or that, if valid at its inception, after its proper payment or satisfaction, it was kept by the payee either through accidental omission to return it to Amos Stone when paid or satisfied, or as a colorable claim to protect Amos from such anticipated proceedings by his wife."   The evidence offered was excluded by the judge in directing the order in which testimony should be put in and was not offered again ; and the exceptions taken to its exclusion must be overruled.

2. The declarations of Abby Andrews * made after she was appointed co-executor with the plaintiff, and while she was at work upon the inventory of P. J. Stone's estate, that " The note ($20,000) had no value ; she was surprised that it had been

* Abby Andrews was the confidential clerk of the plaintiff's testator up to the time of his death.

kept. Mr. P. J. Stone would never have collected it and there would be trouble if it were found"; "in some way it was kept as a protection for Mr. Amos Stone," were competent as admissions of one of the executors. See *Phillips* v. *County of Middlesex*, 127 Mass. 262; *Heywood* v. *Heywood*, 10 Allen, 105; *Atkins* v. *Sanger*, 1 Pick. 192; *Hill* v. *Buckminster*, 5 Pick. 391; *Faunce* v. *Gray*, 21 Pick. 243. The evidence was excluded on the ground that they were nothing but opinions of Abby Andrews. In our opinion they were not open to that objection.

The statement that the note "had no value" is no more incompetent as an admission than a statement by the defendant in an action for negligence that the accident was his fault. Nor do we see how the statement that "in some way it was kept as a protection for Mr. Amos Stone" is open to that objection. Without going through each of the statements offered in evidence, we are of opinion that they were not open to the objection (if that be an objection in case of an admission) "that they were nothing but opinions of Abby Andrews." For cases where testimony which might be thought from the form of the statement to be the expression of an opinion is really testimony to a fact and therefore admissible, see *Clark* v. *Clark*, 168 Mass. 523 (where the cases are collected and discussed) and *Bayley* v. *Eastern Railroad*, 125 Mass. 62, 65.

3. As the second exception taken at the trial must be sustained, as we have just held, and the case must go back for a new trial, we shall consider the other questions of evidence as they are likely to arise at the trial which is to take place.

The defendant offered to prove in substance that by a release dated February 1, 1880, and acknowledged February 9, 1880, Amos conveyed to Phineas two portions of real estate which he offered to prove were worth from $17,000 to $18,000, and that before February 1, 1880, Amos owned eighty shares in the capital stock of the Mystic River Corporation which "stood in his name until this $20,000 note transaction; that then, they were transferred to Phineas, who received for them ultimately bonds 151 to 160 of the Lowell Railroad; that those bonds were sold by Francis Henshaw and Company and a check therefor made to Phineas for about $8,000; that Joseph Stone and parties here could explain the payment in no other way than in connection

with the $20,000 note in suit." This evidence was offered twice, and was excluded by the judge. The first time it was offered the judge in excluding it said: "I don't see how you can bridge the gap between the two. Of course, if you can show any special agreement that the money was applied for that purpose well and good, but you don't offer to do this. I am not going to indulge in conjectures. . . . I don't see how it is competent unless you are going to show some — try to show some special application of the payments here on this note." The second time he said "I ought to follow the ruling of the auditor in that respect." We infer that the judge referred to the ruling of the auditor "that it was improper to go into a general accounting covering several years, of all transactions between Amos and Phineas; that I should hear and consider only evidence that could be shown to bear directly upon the transaction at issue."

In this connection the defendant asked the plaintiff this question: "Can you show from your investigation of your father's affairs anything that would be a payment for this release and for the bonds which you received unless it was the payment of the note in question?" and he answered "No." This testimony was stricken out on the ground that the question was argumentative.

The defendant then offered evidence in connection with declarations of Amos to the effect that he had "never been connected with P. J. Stone in only three transactions," namely, the wharves on Medford Street, the Mystic River flats, and the Malden or syndicate property; "that the transfers of wharves and of the Mystic River stock or the bonds of the Boston and Lowell Railroad, had nothing to do with the syndicate property or land in Malden which was otherwise paid for." The defendant also offered the various papers annexed to the bill of exceptions, marked Exhibit B, "as tending to show the various amounts due for repairs and interest on mortgages at the respective times from P. J. Stone to Amos Stone, from the Charlestown Five Cents Savings Bank to Amos Stone, and the amounts due from Amos Stone to Phineas J. Stone and the amounts due from Amos Stone to the Charlestown Five Cents Savings Bank, and that the various sums due for these purposes from P. J.

Stone to Amos and from the bank to Amos and the various sums due to each of them were set off against each other, and the balance then settled and paid; and claimed that the same constituted accountings together, and accords and satisfactions, at the various periods, between the bank, P. J. Stone and Amos Stone of all sums due to or from Amos and to or from each of them, and the court excluded this evidence of such accountings together or accords and satisfactions." From an inspection of Exhibit B, it would seem that there were eight accountings between Amos, Phineas and the savings bank, two between Phineas's estate acting by Abby Andrews, executrix, Amos and the savings bank, and two between Phineas's estate acting by the plaintiff Joseph Stone, Amos and the savings bank.

The defendant has contended that the following evidence which he offered was ultimately ruled out (whether it was or was not is not material in connection with the new trial which is to take place): " That from August 7, 1880, down to the time of his death P. J. Stone paid in cash to Amos Stone, at intervals of two or three months, amounts varying from $50 up to $668 each and aggregating about $4,500, for repairs done by Amos at various times for Phineas on Phineas's property; and that these repairs and payments were in addition to, and were not included in, those set forth in the accountings together which have been mentioned, but were paid in the intervals between the said accountings. The judge stated, ' If you are going to expend time in investigating this as an auditor would do, I think perhaps I ought to follow the ruling of the auditor. I don't propose to have a case referred to an auditor for nothing. . . . It seems to me the fact that he did make payment, and if you can state the amount, might be competent simply as a matter of argument that Phineas J. Stone would not have made these payments if he had a note in his possession to offset.' "

The defendant offered evidence to prove that from 1880 to the time of his death P. J. Stone was president of the Charlestown Five Cents Savings Bank and paid for the bank to Amos for repairs similar to those heretofore mentioned, in a similar way and at similar intervals, sums aggregating probably $10,000 or more, in addition to the items mentioned in the accounting

together or accords and satisfactions. The judge excluded the evidence.

In determining the relevancy of the evidence thus excluded, it is necessary to have in mind what the case was in which this evidence was offered.

It was an action on a demand note on which no interest or principal ever had been paid, brought fifteen years after its date, four years after the payee had died, and three months after the death of the payee's confidential clerk, Abby Andrews, who, together with the plaintiff, the only son of the payee, was the executor of the payee's will. There was evidence that when this action was brought the maker's mind had failed. The note had not been included in the inventory of the payee's estate, and the plaintiff's story was that it was found by Abby Andrews thirteen months before the date of the writ, in an envelope in a drawer which she supposed contained nothing but old diaries of the payee, the plaintiff's father. There was evidence that in the envelope in question were the note in question, another similar note for $5,000, and a memorandum which was put in evidence; and that in this drawer there was nothing but this envelope and Phineas's diaries from 1876 to 1890. There also was evidence that the drawer in question was used indiscriminately by Phineas, Amos and Phineas's clerk, Abby Andrews. The auditor states in his report that beyond the conversation between Joseph and his father on the Thanksgiving day here referred to, " Joseph knew little of his father's affairs in his life time. ' The plaintiff testified " that everything that constituted his father's estate except the notes in question, certain small notes and rent bills was kept in a distinct and different place from the drawer in which the note in suit was found," and also " that his father kept no books of account except the cash account in the diaries; that he used loose checks in drawing on his bank account, entering them on a slip, and that he had not preserved his father's checks." There was evidence that Amos was worth upwards of $300,000 in 1880, and that his rents on real estate in Charlestown, Everett, Malden, Melrose and Chelsea amounted to $12,000 or $15,000 a year. The auditor states that "it was in evidence that when Amos died his affairs were in confusion."

Dealing first with the specific objection to the questions asked of Joseph as to whether his investigation of his father's affairs showed anything that would be a payment for the conveyance to his father by Amos of the real estate covered by the release of February 1, 1880, and for the transfer of the Mystic flats stocks: The question was a proper question as to the result of an examination of voluminous accounts and memoranda. We see nothing argumentative in the question. The fact that the conveyance of this real estate and the assignment of these shares of stock were not otherwise paid for was a material fact in the defendant's case. In our opinion the question was competent.

Coming to the evidence offered and excluded as a whole: It is apparent that to exclude all this evidence was to deny to the defendant the right to prove by circumstantial evidence that the note had been paid, and to explain why if it had been paid it was not destroyed. This is apparent from the ground on which the conveyance of the real estate and the transfer of the Mystic flats stock was excluded, namely, "If you can show any special agreement that the money was applied for that purpose well and good, but you don't offer to do this." Such a special agreement would be direct evidence of payment. What the defendant was trying to show and had a right to show was that taking all the circumstances together, not each one by itself, the note was paid; or, stating it more in detail, this evidence tended to show that the loan of $25,000 was originally made and the notes given to "protect" Amos from his wife, as it was put in the evidence; that the two notes of $20,000 and $5,000 were paid in part by a conveyance of real estate (which contained a false recital of the consideration on which the conveyance was founded, to throw Amos's wife off the scent) and in part by the Mystic flats stock before any interest became due and consequently no interest or principal was ever paid on the notes. And to enforce this conclusion there was evidence that Amos was a rich man; that he and Phineas had ten accountings, and he and Phineas's executor (who there was evidence then knew of the existence of the note) had two accountings, in which this was not mentioned; that from 1880 to 1891, when Phineas died, he, Phineas, paid in cash to Amos, at intervals of two or three months, amounts aggregating about $4,500 on his own account, and on account of the

bank amounts aggregating probably $10,000; and that the notes were kept in what, if the defendant's evidence is to be believed, the defendant's counsel has perhaps not unjustifiably termed a "rubbish drawer." In our opinion all this evidence should have been admitted.

There is one other piece of excluded evidence which the defendant has strenuously insisted upon. The plaintiff testified "that his father spent Thanksgiving Day, 1886, with him in Lawrence; that his father expressed annoyance caused by Amos throwing his money away; that his father said that Amos was in debt greatly, saying ' I have had to advance a great deal of money to him to secure his accounts with Middlesex County,' and ' Now I have got to let him have some more to take some mortgages out of the bank which the bank commissioners have complained that the mortgage notes bear Amos's name as a guarantee, and they said they were not proper mortgages to be there.' "

"To impeach and contradict" this testimony, "the defendant offered to prove that no mortgages were assigned to P. J. Stone earlier than the statute of 1889, now R. L. c. 113, § 27, which required the transfer or disposal of mortgages held by savings banks on property in which certain of its officers were interested. The judge excluded the evidence saying ' It may prove a contradictory statement. It seems to me rather immaterial any way.' "

The case at bar turns largely on the credit to be given to the testimony of the plaintiff. His story of what Abby Andrews told him as to the finding of the two notes cannot be true if Miss Getchell's testimony as to what Abby Andrews said concerning these notes when she (Abby Andrews) was making up the inventory is true. In addition to what has been stated, the plaintiff testified that Abby Andrews said to him when she handed him the envelope containing these notes: "That she had always known, or always believed that Amos was largely indebted to my father, but up to this time she had never been able to find any evidence of it, but here was a note which she had found." The plaintiff denied *in toto* the conversation at Young's Hotel, testified to by Marie Gilson, "that Joseph said to Amos, ' I have found those notes that father spoke to me about; I found them in an old diary; I never can think to have

them with me when I am going to see you'; that Amos Stone replied, 'Oh, when you come across them you can hand them to me'; that Joseph Stone said, 'I can never think to have them with me to give you, when I am going to see you'; that Amos didn't seem to be in any way concerned about it, and said to Joseph Stone that there was no value placed upon the notes in the inventory."

The defendant has assumed that the complaints of the savings bank commissioners referred to by Phineas in this testimony of Joseph were founded on St. 1889, c. 161, of which R. L. c. 113, § 27, is the re-enactment. But if there were assignments of mortgages by Amos to Phineas before the enactment of that statute this assumption hardly would be warranted. This evidence to impeach and contradict was offered twice. The second time that it was offered the evidence was that there were no assignments "earlier than for instance 1888." If there were assignments in 1888, the assumption on which the evidence to impeach and contradict is based is shown to be wrong. Nothing further need be said on this matter now.

The defendant also has insisted upon his exception to the exclusion of the check of Henshaw and Company for the sale of the bonds into which the eighty shares of Mystic flats stock had been converted. Much of this argument seems to be founded on matters set forth in a former suit between the same parties not fully set forth in this bill of exceptions.

*Exceptions sustained.*