FRANK A. GORHAM & another, executors, *vs.* CHARLES
H. MOOR.

Suffolk.    December 9, 1907. — February 28, 1908.

Present : KNOWLTON, C. J., HAMMOND, LORING, BRALEY, & RUGG, JJ.

*Will*, Soundness of mind, Undue influence. *Evidence*, Opinion: experts, Admissions
and confessions.   *Witness*, Contradiction and impeachment.   *Practice, Civil*, New
trial.

On the issue of the soundness of mind of a testatrix, witnesses other than the at-
testing witnesses of the will and the family physician of the testatrix, who are
neither alienists nor physicians but who knew the testatrix intimately for a
considerable period of time extending sufficiently near to the time of the execu-
tion of the will to make their observation of facts competent, may be asked by
the executor, expecting a negative answer, whether they ever saw the testatrix
do or heard her say anything that indicated anything singular or unusual re-
specting her mental condition.

Upon the trial of the issue of undue influence in proving a will, a declaration by
the person charged with having procured the execution of the will by undue
influence, that he did exercise such influence, is not evidence of that fact as
against other parties in interest.

It is proper to exclude evidence of a previous declaration of a witness, which is
offered to contradict his testimony, if the testimony sought to be contradicted
has been corrected by the witness himself in his later testimony, so that the
declaration offered is not in contradiction of his corrected testimony.

To impeach the credibility of a witness, evidence is admissible of a previous decla-
ration made by him which contradicts his testimony in any material matter.

Upon the trial of the issue of undue influence in proving the will of a testatrix, if
the person charged with having procured the execution of the will by undue
influence has testified that he never advised or talked with the testatrix about
her will or had anything to do with the making of it, it may be shown, for the
purpose of impeaching his credibility as a witness, that at another time and
place he made a statement that the will was as he told the testatrix to make it.

Where in the trial of issues framed for a jury in proving a will, there has been
error in the exclusion of evidence which should have been admitted in the trial
of the issue of undue influence, but the other issues have been tried without
error, a new trial will be granted upon the issue of undue influence only, and
the verdict of the jury on the other issues will stand.

RUGG, J. These exceptions relate to a trial of issues as to
undue influence and soundness of mind of Mary Ann Gowen
in the execution of her last will.

1. Several witnesses other than the attesting witnesses of the
will and the testatrix's family physician were asked, in sub-
stance, the question whether they ever saw the testatrix do
or heard her say anything that indicated anything singular or

unusual respecting her mental condition.*    None of these wit-
nesses were alienists or physicians, but they all had an intimacy
with the testatrix for a considerable time, and covering a period
sufficiently near to the date when the will was executed to make
competent their observations of facts.   It was early established
as the law of this Commonwealth that witnesses not experts
are not permitted to give their opinion in regard to the sanity
of one whose mental condition is drawn in question.   Excep-
tions, not material in this inquiry, are made in the trial of will
cases as to the subscribing witness and the family physician of
the testatrix.   This court, although repeatedly asked, has always
refused to change this rule, and it is not now open to discussion.
*McCoy* v. *Jordan,* 184 Mass. 575.   The difficulty in its applica-
tion lies in keeping distinct the line between statements of facts,
from which the jury can draw an inference as to the mental
capacity of the person under inquiry, and an expression of
opinion as to what the facts show.   Many statements of fact
involve to a greater or less extent an exercise of judgment, and

---

* The questions referred to were put by the counsel for the executors
and were admitted by the presiding justice against the exception of the con-
testant.   All of them were answered in the negative.   The questions were
as follows : " Did you observe any fact about her conversation that indicated
anything singular or unusual respecting her mental condition ? "   " Did you
notice anything that indicated a failing of her mind after the shock up to
the time of her death? "   " Did you ever hear her say anything or see her
do anything that indicated any failure of her memory ? "   " Did you ever
notice anything about her condition that indicated anything singular or un-
usual respecting her mental condition ? "   " Did you ever see her do any-
thing or say anything that indicated to you in any way that her mind was
affected or weakened ? "   " Did you ever see her do anything or hear her
say anything that indicated to you that her mind was weakening or fail-
ing ? "   " Did you ever notice anything in her conversation that indicated
to you any weakness of the mind ? "   " Did you, during the whole time of
your acquaintance with her, ever hear her say anything or see her do any-
thing that indicated that her mind was affected or weakened ? "

" In addition to the general objection, objection was specially made that
the several questions were in no way admissible unless they were to be
followed up by facts or circumstances, and the witnesses cautioned that
they were not to express an opinion or the jury informed that it was not to
be given weight as an opinion.   This was ·not done, the presiding justice
deeming it unnecessary."   The executors did not contend that the ques-
tions were in any way preliminary, and except in case of four of the wit-
nesses they did not go further.

they generally require observation and attention. Frequently a deduction from certain facts must be made in order to determine the fact directly in issue. To decide whether one is intoxicated or not, when nicely analyzed, demands an observation of certain facts or conditions, and an inference as to the cause of these manifestations. But the result is not a matter of opinion ; it is a statement of fact. *Edwards* v. *Worcester*, 172 Mass. 104. The precise form of question, which is aimed to elicit a fact as distinguished from that which calls for an opinion, has frequently been considered. All the previous cases are cited, discussed and classified in *Clark* v. *Clark*, 168 Mass. 523, decided in 1897. Since that time question has arisen, in *Hogan* v. *Roche*, 179 Mass. 510, where it was held that an inquiry as to whether the witness had observed in the testatrix "any peculiarity of manner, speech or conduct" was admissible ; in *Ratigan* v. *Judge*, 181 Mass. 572, the question "Was he subject to delusions or hallucinations?" was held to be incompetent, as requiring an opinion as to mental condition; and in *McCoy* v. *Jordan*, 184 Mass. 575, where the subject was again elaborately discussed, it was there held that the following questions were competent : "Did you ever notice anything to indicate that he was not of sound mind?" "Whether or not you noticed any failure of intelligence on his [the testator's] part?" "What facts did you observe as to his [the testator's] powers of comprehension, mental grasp, coherency, power of reasoning, memory, intelligence, will and accuracy?" It was further said in the course of the opinion, page 578, "A witness may properly be asked if he has observed any facts that have relation to the subject upon which information is sought. Such a question can usually be answered by 'yes' or 'no.' If he answers in the affirmative, he may be asked to state what he has observed. If the purpose is to prove a negative, the question may be so framed as to direct the attention of the witness to his observation as to peculiarities of speech or manner of conduct, or anything else indicating an unusual mental condition." The questions objected to by the contestant in the present case appear to have been framed in view of this last statement of the law, and were therefore not open to objection. See also *Stone* v. *Stone*, 191 Mass. 371, 376.

2. One issue was whether the testatrix was unduly influenced by one Gorham. He was called as a witness, and testified that he never advised or talked with the testatrix about the will, or in any way had anything to do with the making of it. On cross-examination he testified, on one day, that he did not see the will nor have any intimation of its contents, so far as he remembered, until the will was offered for probate, which was seven days after the death of the testatrix. On the following day, however, he modified this statement and testified that he read a copy of the will at the office of the attorney who drafted it on the day after her death. He was also asked on cross-examination whether, at a conversation with a Mrs. Cousin on the day after the death of the testatrix, he did not say to her that the will was short and to the point as he told her [the testatrix] to make it, and to this question he answered no. Thereafter, the contestant called Mrs. Cousin, and asked of her what Mr. Gorham said in regard to the will, for the purpose of contradicting both his denial of having said that the will was short and to the point as he told her to make it, and also his statement that he had no knowledge of the contents, offering upon the latter point to show that he had informed the witness as to the nature of the will and certain provisions in it at a time when, according to his testimony as given on the first day he was on the witness stand, he could not have obtained any knowledge about it after the testatrix's death.

The inquiry of the witness Gorham as to whether he had not said the will " was short and to the point as he told her to make it " was irrelevant if calling for affirmative evidence. A declaration by one, charged with having procured by undue influence the execution of a will, that he did exercise such influence is not evidence of the fact as against other parties in interest. The rights of innocent devisees and legatees cannot be thus affected. " Such a rule would violate all sense of right." *Shailer* v. *Bumstead*, 99 Mass. 112, 128. It would not be competent for a party in cross-examination to draw out such irrelevant testimony, and thereafter undertake to impeach the witness by showing that he had made inconsistent or conflicting statements at other times. *Force* v. *Martin*, 122 Mass. 5. *Parker* v. *Dudley*, 118 Mass. 602. *Commonwealth* v. *Matthews*, 129 Mass.

485. *Commonwealth* v. *Fitzgerald*, 2 Allen, 297. *Mowry* v. *Smith*, 9 Allen, 67. Although the second branch of the offer tended to contradict the testimony of Gorham as given on the first day, yet as he finally left it on the second day of his examination, by having said that he read a copy of the will during the day after the death of the testatrix at the office of the attorney, it did not have a tendency to contradict him to show that on the evening of the day on which, as he testified, he had seen the will, he made statements as to its contents to Mrs. Cousin. It was open to the contestant to argue as to the inconsistencies of the witness's testimony and the fallibility of his memory, but not to contradict a statement made early in the examination, which the witness himself corrected before the conclusion of his testimony. These were the grounds upon which the testimony was chiefly offered at the trial; but, during the discussion, it was said by one of the counsel for the contestant: " We offer it not because it is material to the case, but because it bears on Mr. Gorham's credibility." This was a general offer, and enables the contestant now to sustain his exception, if he shows that it contradicted any material evidence given by the witness Gorham. The latter had testified generally that he never advised or talked with the testatrix about her will, or had anything to do with the making of it. A statement made by him at another time and place that the will was " as he told her to make it " tended to contradict him upon this portion of his material testimony, and was therefore admissible. We cannot say that the contestant may not have suffered harm by the exclusion of this evidence. His exception on this point must be sustained. As two distinct issues were passed upon by the jury, and the point upon which the exceptions must be sustained relates solely to the issue of undue influence, the new trial is to be confined to that issue, and the verdict of the jury upon the issue as to the soundness of mind of the testatrix and any other, which may have been submitted to them, is to stand.

*So ordered.*

*A. S. Littlefield,* (of Maine,) (*L. G. Roberts* with him,) for the contestant.

*F. N. Nay,* (*J. L. Bates & F. A. Appleton* with him,) for the executors.