ÉLIZABETH BAYLEY, administratrix, *vs.* EASTERN RAILROAD COMPANY.
STEPHEN SIBLEY *vs.* SAME.

Suffolk.   Mar. 25. — July 18, 1878.   ENDICOTT & LORD, JJ., did not sit.

In an action for personal injuries occasioned to the plaintiff's intestate by a collision with one of the defendant's trains at a grade crossing of its railroad, the evidence tended to show that the intestate was driving along a highway from which the defendant's road was visible for about half a mile; that the highway approached the railroad at an angle of sixty degrees; that the intestate was sitting in a covered wagon, about two feet back from the forward end of the covering, and was driving at a smart trot until he reached the immediate vicinity of the crossing; that it was early in the evening and pretty dark, although darkness had not fully set in; that there was a gas-light near the crossing, and a gate, which, when closed to indicate the approach of a train, crossed the highway at the opposite side of the railroad to that from which he was crossing; that just before he reached the track on which the train was running, the gate-keeper employed by the defendant began to close the gate, swung his lantern, and shouted to the intestate to stop; that the latter then reined up his horse and brought him to a full stop; that, immediately after this, the gate-keeper shouted to him to hurry up; that the intestate then started his horse, and before getting across the track was struck by the engine, receiving the injuries complained of; and that the bell on the engine was not rung, or the whistle sounded, as required by law. *Held*, that, on this evidence, the jury would be warranted in finding for the plaintiff; and that a request of the defendant to rule that, if the signals required by law were given, there was no evidence which would warrant a verdict for the plaintiff, was properly refused.

At the trial of an action for personal injuries occasioned to the plaintiff's intestate by a collision with one of the defendant's trains at a grade crossing of its railroad, a witness, who had testified that, at the time of the accident, he was near the defendant's gate-house and saw the gate-keeper go out in a hurry to close the gate, and that he was familiar with the gate and its operation, and with the neighborhood of the gate-house over which the gate-keeper must pass to close the gate, was asked by the plaintiff's counsel, " Whether or not, in your judgment, from the time you saw the gate-keeper leave the gate-house until the train went past the gate-house, there was or was not time for the gate-keeper to go and close the gate ? " To this the witness replied, " In my best judgment, he had rather short time, though he might have shut it before the train passed." *Held*, that this answer was a statement of his judgment as to the time which elapsed after the gate-keeper left the gate-house before the train passed it ; and that the defendant had no ground of exception to its admission.

Two ACTIONS OF TORT. The first was for personal injuries to the plaintiff's intestate, Stephen Bayley, occasioned by a collision with one of the defendant's trains at a grade crossing of its railroad over Everett Avenue, in Chelsea. The second was for injuries to the plaintiff's horse and wagon, while being driven by Bayley, his servant, from the same cause.

At the trial in the Superior Court, before *Bacon*, J., the jury returned a verdict for the plaintiff in each case ; and the judge allowed a bill of exceptions, the material parts of which appear in the opinion.

*S. Lincoln, Jr.*, for the defendant.

*E. O. Shepard*, for the plaintiffs.

SOULE, J. There was evidence in the case that the accident happened about eight o'clock in the evening of August 19, 1876 ; that there was no moon, and it was pretty dark, though the dark ness had not fully set in ; that the weather was fair ; that the intestate, Bayley, was driving along a highway from which the road of the defendant was visible for about half a mile ; that the highway approached the railroad at an angle of sixty degrees ; that Bayley was sitting in a covered wagon, about two feet back from the forward end of the covering, and was driving at a smart trot until he reached the immediate vicinity of the crossing ; that there was a gas-light by the crossing, and a railroad gate, which, when closed to indicate the approach of a train, crossed the highway at the opposite side of the railroad to that from which he was coming , that, just before he reached the track on which the train was running, the gate-keeper employed by the

defendant began to close the gate, and shouted to Bayley to stop, and swung his lantern, and thereupon Bayley reined up his horse, and brought him to a full stop; that, immediately after this, the gate-keeper shouted to Bayley to hurry up, and Bayley started his horse, and, before getting across the track, was struck by the engine and hurt, and the horse and wagon, the property of the plaintiff in the second case, were damaged. There was also evidence that the bell on the engine was not rung, nor the whistle sounded, as required by law.

On this evidence, the learned judge who tried the case properly refused to rule that the jury would not be justified in finding a verdict for the plaintiff in either case. If the jury were satisfied that the defendant neglected to give the signals, by ringing the bell or whistling, required by the St. of 1874, c. 372, § 123, the plaintiffs would be entitled to recover, unless it was shown that Bayley was guilty of gross or wilful negligence, or was acting in violation of law, and that such gross or wilful negligence or unlawful act contributed to the injury. St. 1874, c. 372, § 164. The plaintiffs were therefore entitled to go to the jury on the question whether the defendant gave the signals or not. The exception taken to the terms of the ruling given to the jury on this point was waived at the argument.

A question remains on the refusal to rule that, if the signals were given, there was no evidence which would warrant a verdict for the plaintiffs. We are of opinion that such ruling, if given, would have been erroneous. It was an open question whether Bayley had not calculated with accuracy that he had time to cross the track before the engine reached the crossing, and whether he would not have crossed in safety but for the outcry of the gate-keeper, calling on him to stop, and whether he used that degree of care which a man of ordinary prudence would use in such a situation, in attempting to cross in the first instance, in stopping at the suggestion of the gate-keeper, and in starting again at his invitation.

The case is not governed by the principle which applies when a person, without any reason of necessity or propriety to justify him in doing so, puts himself in a place of exposure to injury and he is not permitted to recover for such injury, though able to show that negligence of the other party contributed to pro-

duce it. It is rather one of those cases in which a railroad company, having made arrangements for the accommodation of persons crossing the track of its road, so manages in a particular instance that its conduct may furnish a justification to the party injured for being on the track. And although the burden, in such cases, is still on the plaintiff to show the exercise of such care as a man of ordinary prudence would exercise under like circumstances, the question whether he did so or not is to be determined by the jury after considering all the circumstances surrounding the event. It is not the duty of the court to decide the question on the preponderance of the evidence. *Mayo* v. *Boston & Maine Railroad*, 104 Mass. 137. *Warren* v. *Fitchburg Railroad*, 8 Allen, 227.

The only remaining exception is to the admission of a question put to Alexis Read by the plaintiffs. This witness testified, without objection, that he was near the gate-house, and saw the gate-keeper go out in a hurry to close the gate; that he was familiar with the gate and the neighborhood of the gate-house, over which the gate-keeper must pass to close the gate, and knew how the gate was operated. The plaintiffs then asked this question : " Whether or not, in your judgment, from the time you saw the gate-keeper leave the gate-house until the train went past the gate-house, there was or was not time for the gate-keeper to go and close the gate ? " To this question the defendant objected, but the judge permitted the witness to answer, and he replied, " In my best judgment, he had rather short time, though he might have shut it before the train passed, but he had short time."

The objection to this evidence is apparent rather than real. The question was not put nor answered for the purpose of getting the opinion of the witness as to the length of time which the gate-keeper would require in order to travel a given distance, which would have been open to objection, as being a matter as to which the witness had no better means of judging than the jurors or any other adults had. The purpose and effect were to get at the opinion of the witness as to the time which elapsed after the gate-keeper started from the gate-house, before the train passed the gate-house. Evidence on this point was pertinent, on the question of negligence of the defendant. That the question

called for and the answer gave only opinion does not make the evidence incompetent. All statements as to the lapse of time between two occurrences are opinions merely, unless the person inquired of measured it by a time-piece; but the opinion of witnesses on this subject is taken every day, without objection. It is the judgment of one who had the means of observation, but took no special steps to preserve an accurate recollection. The judgment is quite as likely to be correct when the length of time is stated as being as long as it would take to walk a given distance, as when it is stated in minutes or seconds.

*Exceptions overruled.*