HENSON, Respondent, v. WILLIAMSVILLE, GREENVILLE & ST. LOUIS RAILWAY COMPANY, Appellant.

St. Louis Court of Appeals, February 21, 1905.

RAILROADS: "Locomotive." The term "locomotive" as used in section 1106 of the Revised Statutes of 1899, allowing damages for live stock which may be injured by being frightened by a locomotive or train at a place where the railroad is not fenced, does not apply to a "speeder," a vehicle in form like a hand-car but run by a gasoline engine.

Appeal from Wayne Circuit Court.—*Hon. F. R. Dearing,* Judge.

Reversed.

*James F. Green* and *John H. Raney* for appellant.

(1)   To justify a recovery under the provisions of the statute, the stock injured must have been frightened by a locomotive or train. The car operated by defendant's employee was neither. R. S. 1899, sec. 1106; Perkins v. Railroad, 103 Mo. 52, 15 S. W. 320; Briggs v. Railroad, 111 Mo. 168, 20 S. W. 32.  (2)  The statute in question must be strictly construed. Defendant's instruction declaring that plaintiff was not entitled to recover should have been given. Stranahan v. Railroad, 84 N. Y. 314; Sutherland, Stat. Con., sec. 371; 13 Am. and Eng. Ency. of Law, p. 999; 1 Bouvier's Law Dictionary (Rawle's Ed.), 274.

*O. L. Munger* and *Charles M. Hay* for respondent.

(1)  ''The sum and object of all rules of statutory construction is to determine what was the general purpose sought to be accomplished by the law.'' Warren v. Barbee Paving Co., 115 Mo. 577.  (2)  Statutes requiring railway companies to fence their tracks have generally been held to be remedial, and hence they are given a liberal construction. Railroad v. Brubaker, 47 Ill. 462; Railroad v. Heflin, 65 Ill. 367; Tracey v. Railroad, 38 N. Y. 433.

STATEMENT.

The action is bottomed on section 1106, Revised Statutes 1899, which reads as follows:

''Whenever any live stock shall go in upon any railroad or its right of way, in this State, and the said railroad is not at such place or places inclosed by a good fence on both sides of said railroad, such as is by law required, and such stock, by being frightened or run by any passing locomotive or train on said railroad, shall be injured or killed by or because of having run against the fence on either side, or into any cul-

vert, bridge, slough or mire, or other object along the line of said road, the railroad company shall pay the owner of any such stock so injured or killed the damage sustained."

Plaintiff's horse went upon defendant's railroad track at a place where defendant was required by law to maintain fences but where there were no fences. The horse was frightened by what the witnesses term a "speeder," running on the railroad track. After being frightened by the speeder, the horse ran down the track into a trestle and was injured and damaged. The speeder was in charge of Joseph Thompson, who was called as a witness for the plaintiff. In respect to the speeder, he testified as follows in describing the construction of the car:

"Q. It resembled a handcar, so far as being flat on top, did it not? A. Yes, sir.

"Q. Was there any cover on it? A. No, sir.

"Q. About what size wheels has it? A. I think they were between twelve and sixteen inches high.

"Q. How many wheels were on it? A. Two big ones and one small one.

"Q. It has two large ones on one side and a small wheel on the other? A. Yes, sir.

"Q. In the center of the car and underneath the floor of it there is a little gasoline tank, is there not? A. Yes, sir.

"Q. And while sitting there you ride out in the open? A. Yes, sir.

"Q. The car, I believe, is about the width of a railroad track? A. Yes, sir.

"Q. Now, it takes two or three men to run a handcar, does it not? A. Yes, sir.

"Q. Did you use this on the railroad in the place of a handcar? A. Yes, sir.

"Q. Because it could be operated more speedily and by one man? A. Yes, sir.

"Q. Is that true? A. Yes, sir.

"Q. You were working for the Holladay-Klotz Land & Lumber Company? A. Yes, sir."

At the close of plaintiff's case defendant moved the court to instruct the jury that under the law and the evidence plaintiff could not recover. The court refused to so instruct and gave other instructions under which the jury was authorized to, and did, find for plaintiff. Defendant appealed.

BLAND, P. J. (after stating the facts).—The horse was not frightened by a passing train; was he frightened by a locomotive? To put the question in another form was the speeder, by which the horse was frightened, a locomotive within the meaning of the term as used in section 1106, supra?

In Fallon v. West End St. Ry. Co., 50 N. E. 536, s. c., 171 Mass. 249, it was held that the Laws of 1887, c. 270, sec. 1, cl. 3, making the employer liable for injuries to an employee resulting from negligence of a fellow-employee in charge of a "locomotive engine or train upon a railroad," relates to those operated or originally intended to be operated to some extent by steam, and does not include electrically propelled cars on street railways.

In Jarvis v. Hitch, 65 N. E. (Ind.) 608, it was held: "A machine which moves backward and forward along the track of a railroad, by its own steam power, and which, while it has not the weight, size, speed, nor power of an ordinary locomotive, was capable of and did the same work to a certain extent, and was also used for the purpose of driving piles, was a locomotive, within Burns' Rev. St. 1901, sec. 7083, providing that every corporation shall be liable for injuries to an employee caused by negligence of any person in the service of the corporation who has charge of any locomotive."

Section 4160, article 2, entitled "Construction of Statutes," R. S. 1899, provides that "words and

phrases shall be taken in their plain or ordinary and usual sense." The word "locomotive" is used in conjunction with the word "train" in the section under review. When so used, the ordinary meaning of the term is the steam locomotive in common use by railroad companies for the purpose of moving their trains and cars, therefore, the machine or car by which plaintiff's horse was frightened is not a locomotive within the meaning of the section. It follows that the instruction in the nature of a demurrer to plaintiff's evidence should have been given.

The judgment is reversed. All concur.