EMMA ERDNER v. CHICAGO & NORTHWESTERN
RAILWAY COMPANY.[1]

August 11, 1911.

Nos. 17,169—(234).

**Use of railroad way by pedestrians — exercise of care.**

Where a railroad company expressly or by silent acquiescence permits
its right of way to be used by the public generally as a path or way for
pedestrians, and this use is long-continued and constant, so that it is reason-
able to anticipate the presence of such pedestrians on its tracks, the com-
pany must use ordinary care to ascertain whether any such are present,
so as to avoid injury to them.

**Questions for jury.**

The questions of negligence and contributory negligence in this case were
for the jury, and the evidence sustains the verdict on such questions.

**Damages.**

The damages are not excessive.

Action in the district court for Blue Earth county by the ad-
ministratrix of the estate of Lee F. Foley, deceased, to recover $2,-
000 for the death of her intestate. The answer alleged that for more
than thirty years there had been maintained by defendant along
Vine street a high and impassable embankment of earth, upon which
its line of railway and tracks had been laid, maintained and used;
that if Vine street was ever dedicated, platted or laid out over the
place occupied by defendant's line of railway, or was ever opened
for public use or ever used at the place where defendant's line of
railway crossed over the same, defendant had for more than thirty
years been in the continuous, open, notorious, exclusive and hostile
possession of that portion over which its line of railway was laid
and had during all times claimed the same as the rightful owner
thereof. Defendant further alleged that for more than thirty years

[1]Reported in 132 N. W. 339.

[Note]   Implied license to go upon railroad track, see note in 13 L.R.A. 634.

no part of Vine street, upon which its railway was laid, had been used by the public for any purpose, except by defendant for the purpose of maintaining and operating its line of railway thereon. The reply was a general denial. The case was tried before Pfau, J., and a jury which returned a verdict in favor of plaintiff for $1,000. From an order denying defendant's motion for judgment notwithstanding the verdict or for a new trial, it appealed. Affirmed.

Brown, Abbott & Somsen, for appellant.

S. B. Wilson, for respondent.

BUNN, J.

Lee Foley, a boy under sixteen years of age, was struck and killed by one of defendant's engines while he was walking along defendant's main track in the city of Mankato. This action was brought to recover damages for his death. The complaint alleged that there existed a traveled way along defendant's tracks at the point where the accident happened, and that this way was and had been for a long time, at the invitation, request, license, and permission of defendant, used by the public generally as a way. On the trial the chief controversy was whether the boy was a mere trespasser, or whether defendant owed him the duty to use ordinary care. The trial court denied defendant's motion to direct a verdict, and the case was submitted to the jury. Plaintiff had a verdict, and defendant appealed from an order denying its motion for judgment notwithstanding the verdict or for a new trial.

1. The first and chief question before us is: Was it defendant's duty to use reasonable care to ascertain whether people were walking on or along its tracks, so as to avoid injuring them? A railway company owes no duty to a mere trespasser, except to use reasonable care to avoid injuring him after discovering his danger. But to people who are lawfully on its premises, by express or implied invitation, it owes the additional duty to use reasonable care to discover their presence in a position of danger. The question, therefore, is this: Was Lee Foley a mere trespasser or was he on the track pursuant to the implied invitation of defendant? The answer depends upon (1) the facts; (2) the law.

The facts in this case, briefly stated, are as follows: Defendant's line of railroad runs into and through Mankato. It enters the city from the north, and crosses Madison avenue, Vine and Rock streets before the station yards are reached. These streets run east and west. Madison avenue is not open for travel east of the tracks, nor is Vine street at the point where it is crossed by the tracks. From Madison avenue to Rock street the tracks run upon an embankment which is about forty feet wide and twelve feet high at Vine street. Upon this embankment is the main line of defendant and the main line of the Omaha Company. Switch and spur tracks extended to a quarry north of Madison avenue, and the main yards of defendant south of Rock street; but at Vine street, and for some distance in either direction, the embankment was occupied only by the two main tracks before mentioned. There were thirty-eight regular trains which passed daily over this embankment on either defendant's track or the Omaha track, besides extra trains, and engines engaged in switching operations. For many years prior to the accident, pedestrians had used this embankment to travel on between Madison avenue and Rock street. It was a short cut. There were paths leading down from the embankment at Vine street and at other points, and some of the travel left the embankment by these paths. Men, women, and children traveled on or along the tracks, both day and night, from fifty to three hundred per day. There was seldom a time when some pedestrian was not on the embankment. This use by the public was constant and continued for a long number of years. Defendant knew that the public so used its premises, but made no objection or effort to stop the use.

In the late afternoon of November 10, 1910, Lee Foley and two younger boys visited the stone quarry, and started to return to their homes about six o'clock. They came to the point where the tracks cross Madison avenue, and on Lee's suggestion that everybody walked on the tracks, and that it was the shortest way home, went upon the tracks and walked south on the embankment. They started to walk on the Omaha track. It was dark. They saw the headlight of an engine drawing a long freight train and coming toward them from the south on the Omaha track, and stepped over on the Northwestern

track. They walked south on the latter track, listening and looking for trains. Lee was walking between the rails; the other boys on the rails. The testimony of the boy who survived is that Lee and the other boys looked back two or three times as they were walking along in this manner. One of the boys saw, on looking back, a red light less than forty feet away. He called, "Look out!" and jumped, going over the bank and escaping the engine. Lee Foley and the other boy were struck by the engine and killed. The engine was backing up, and gave no warning of its approach. The only light that could be seen by the boys was the red light spoken of before. The accident happened near where the embankment crosses Vine street.

The evidence abundantly justified the jury in finding that such were the facts. It justified a finding that Lee Foley was using the embankment as a path because the public used it, because he was justified in believing that it was a route usually traveled by the public, with the knowledge and acquiescence of defendant. Was it defendant's duty to use ordinary care to keep a lookout for people who might be on its tracks, and to use ordinary care in the operation of its trains on this embankment, having regard to the probable presence of pedestrians? The answer must be "Yes," if the public was using the right of way as a path or street at the implied invitation of defendant.

Defendant contends that no invitation can be implied from mere use; that the invitation must be expressed, or evidenced by such a physical condition of the premises, created or permitted to exist by the defendant, as amounts to an assurance to the public that they are invited to enter and travel; that mere passive or silent sufferance and neglect to eject trespassers or post notices is not enough to establish an invitation. There is much force in defendant's position when we have a case of less frequent, constant, and long-continued use than we have here. Many people walk on railroad tracks for convenience or pleasure, and it is difficult, if not impossible, for the railroad company to prevent such use of its tracks. But here the use was much more than the ordinary use for convenience or pleasure. Practically the embankment was used as a street by great numbers

of people. Defendant made no objection—did not even post signs. warning people to keep off the tracks. We think the statement of the law made by Justice Brown in the case of Ellington v. Great Northern Ry. Co. 96 Minn. 176, 104 N. W. 827, while not necessary to the decision of the case, is well supported by the authorities, and is a careful and accurate statement of the law on this point. "Where the company expressly or by silent acquiescence permits its yards and premises to be frequented or used by the public generally, or permits such conditions respecting the use thereof to exist as to make it reasonable to anticipate the presence of trespassers, proper precautions must be taken to ascertain whether any are present, that injury to them may be avoided."

We are satisfied that this ought to be and is the law, and we adopt and apply it to this case. The rule as stated has ample support in the decided cases, and is a salutary and reasonable rule. It is not important to define the relation that existed between defendant and the people who used the right of way as a path. The material thing is that defendant owed them a duty beyond the duty of not to wantonly injure them. And the fact that the decedent was using the right of way for his own convenience merely does not make the rule inapplicable. He had been invited to use the right of way for his own convenience, by the silent acquiescence of defendant in such a use by the public generally. Nor do we see any distinction in the fact that the travel was along, instead of across the right of way. We hold that the question of invitation was properly submitted to the jury, under correct instructions, and that the verdict is sustained by the evidence.

2. Defendant urges that decedent was guilty of contributory negligence as a matter of law. We cannot so hold. Taking into consideration his age, the universal custom of using the embankment as a public way, and the evidence as to how the accident happened, we are satisfied that the question was for the jury, and that the evidence justified the jury's decision.

3. Certain rulings of the trial court, instructions, and refusals to instruct are assigned as error. We have examined these rulings, and find no prejudicial error.

4. It is contended that the verdict was excessive. The amount was $1,000. The claim is that the boy's father had abandoned him, and could not expect to receive any pecuniary benefit from his son's life, had he lived. We think the question was properly submitted to the jury, and are unable to hold that the verdict is excessive.

Order affirmed.