No. 26,122.

ANNA ORR, Administratrix of the Estate of FRANK J. ORR, Deceased,
*Appellee,* v. THE ATCHISON, TOPEKA & SANTA FE RAILWAY COM-
PANY, *Appellant.*

SYLLABUS BY THE COURT.

1. RAILROADS—*Injuries at Crossing—Contributory Negligence.* Following *Juz-
nik v. Railway Co.,* 109 Kan. 359, it is held that a person driving an auto-
mobile is not necessarily guilty of contributory negligence in attempting
to negotiate a defective railroad crossing when a train is within his view,
if he has no knowledge of the defects and the train is such a distance away
that he has ample time to pass over a reasonably safe crossing before the
train can reach it, but where by reason of the defects of which he was
unaware until he was upon the crossing, his automobile skidded down the
track and was ultimately stalled thereon, and where he had made diligent
efforts to get it over the railroad track, but was unable to do so before the
collision occurred.   ·

2. SAME—*Injuries at Crossing—Ordinary Care—Question for Jury.* Whether
he exercised ordinary care in going upon the crossing under the circum-
stances was a question of fact for the determination of the jury.

3. SAME—*Generally.* Other objections to the judgment are held to be with-
out material error.

Appeal from Wilson district court; SHELBY C. BROWN, judge. Opinion
filed December 5, 1925. Affirmed.

*William R. Smith, Owen J. Wood, Alfred A. Scott* and *Alfred G. Armstrong,*
all of Topeka, for the appellant.

*J. L. Stryker* and *Miles C. Canty,* both of Fredonia, for the appellee.

The opinion of the court was delivered by

JOHNSTON, C. J.: Frank J. Orr was killed at a railroad crossing
of the Atchison, Topeka & Santa Fe. His widow, as administratrix
of the estate of the deceased, brought an action against the railway
company alleging that the crossing was in a defective and dangerous
condition, did not meet the requirements of the statute as to grade,
planking or filling between the rails, that the approach to the rails
had been recently filled with wet, mucky dirt, scraped from pools
on each side, making a fill of loose dirt about three feet deep, and
that cars in passing over the fill made deep ruts about a foot deep.
That the planks along the rails were insufficient and the space

1. Railroads, 33 Cyc. p. 1127; 21 L. R. A., n. s., 794; 29 L. R. A., n. s., 924;
46 L. R. A., n. s., 702; 22 R. C. L. 1015.  2. Id., 33 Cyc. p. 1111; L. R. A. 1915C,
820; 22 R. C. L. 1019.  3. Appeal and Error, 4 C. J. §§ 3028, 3039; Death, 17 C.
J. § 167.

between the rails was filled with loose, wet, slippery dirt, and that as the automobile driven by plaintiff went upon the crossing, which was at an angle of about thirty-three degrees, it slid a considerable distance off of the planks and stopped, and the wheels of the automobile could not be made to cross the rails, which projected about eight inches, and was stalled; and while it was so stalled the train of the defendant, which was backing down the track, ran recklessly, without sounding a whistle or giving any warning, and demolished his car and killed him.

The defendant answered with a general denial and an allegation that the death of Orr was caused solely by his own negligence. The trial resulted in a verdict in favor of plaintiff for $10,000, and with it the jury returned special findings to the effect that the defendant's negligence consisted in not providing a proper crossing, and as to the conduct of the deceased that there was nothing to obstruct his view of the approaching train at the time he went upon the railroad crossing.

To a number of special questions that were submitted the jury responded with answers, "No evidence." At the instance of the defendant the jury were sent back to make findings on the unanswered questions, but they returned later without making any change in them. A second request of the defendant that the jury should be required to make definite answers to some questions upon which it was contended evidence had been given, was denied. Judgment in favor of the plaintiff was rendered upon the verdict.

In its appeal defendant alleges error and insists that the proximate cause of the collision was not the condition of the crossing, but was rather the negligence of the deceased in attempting to cross the railroad track in the face of an approaching train, of which he had an unobstructed view for a quarter of a mile before he reached the crossing. It may be said that the defendant offered no testimony, but rested its case upon that offered in behalf of the plaintiff. A demurrer to the plaintiff's evidence was overruled and a motion for a directed verdict was likewise denied. The negligence of the defendant in the maintenance of the crossing was shown beyond a peradventure. There was proof of noncompliance with the statutory requirements in respect to the grades of the approaches, of the material used in making them, of the width of the approaches which formed a part of a hard-surfaced road, of the muddy filling between the rails of the track, and of the failure to fill between them up to the level of the rails. Instead the approaches had been

Orr v. Atchison, T. & S. F. Rly. Co.

leveled up with wet, mushy soil scooped from low, wet ground by the side of the track, the space between the rails was partly filled with the same material, and when the automobile went upon the track, at the angle of the crossing mentioned, one of the front wheels passed over the second rail, but when the other hit the rail, which projected about eight inches above the ground, the car slid on the slippery track and finally stalled there. Defendant bases its contention not on the lack of evidence to show negligence on its part, but rather on Orr's negligence in driving on the track when the approaching train was within his view, the jury having found that it could have been seen by him when he came within twenty feet of the track. A motorist is not necessarily negligent in driving upon a railroad crossing when he sees an approaching train at a distance which gives him a good margin of time to cross, if he is unaware of any defect in the crossing. Assuming that Orr took the precaution to look for a train and had seen it at the distance mentioned, or 1,000 feet away, he had a right to infer that he had plenty of time to negotiate the crossing in safety. Defendant cites and relies on *Bunton v. Railway Co.*, 100 Kan. 165, 163 Pac. 801, a crossing case, where the plaintiff drove his car upon a defective crossing and into a mudhole and a depression between the rails of three inches, which had the effect of stopping his car. It appears that he heedlessly ventured upon the track when the train was close to the crossing and in plain view, and did not in fact have sufficient margin to make the crossing even if it had been in good condition. In the opinion treating of the closeness of the train when the plaintiff went upon the track and that he did not remember what happened afterwards, it was said:

"Of course not. The train was right on him, moving at fifty or sixty miles an hour. The plaintiff thought the train was 150 or 200 feet away when his car stopped. A train going sixty miles per hour moves eighty-eight feet per second. If plaintiff's car had not lost power going through the mudhole and up the steep, slippery grade and stopped on the track, his wife might have escaped death through his heedlessness by about two or three seconds! The plaintiff sought to negotiate the crossing ahead of the train by too narrow a margin, however negligent the railway company may have been in permitting a depression of three inches between the rails and planks at the railroad crossing, or however steep the grade and however muddy the approach to the crossing might be." (p. 169.)

The testimony in the present case tends to show that the train was so far away when Orr reached the crossing that he had ample

time to negotiate a proper crossing in safety. It appears that after he struck the dangerous crossing his car skidded down the track almost to the cattle guard, and that the car had been maneuvered back and forth in an effort to make it mount the rail which protruded about eight inches above solid ground. These facts tend to show the margin of time he had to cross after reaching the crossing if it had been in fair condition. The facts of this case more nearly fit into the rule of *Juznik v. Railway Co.,* 109 Kan. 359. There the plaintiff drove his car upon a defective crossing, where it became stalled and was struck by an approaching train. The defendant contended that the collision was due to negligence of the plaintiff, when by looking he could have seen the train approaching. It appears that the plaintiff could have seen the train about 1,000 feet away when he was within seven and one-half feet of the track, and when he was seventeen and one-half feet from the track could have seen it for a distance of three hundred feet. There was testimony tending to show that if he had seen the train approaching he would still have had sufficient time to have passed over the crossing in safety had it been in a fairly good condition. In deciding the case it was said:

"He was unaware of the condition of the crossing, and had a right to assume that it was in a fit condition, and that he could pass over it in safety, until he discovered the latent defects, and that was when he dropped into the soft dirt and ruts between the rails. Considering the speed of the train and that half a minute elapsed after plaintiff was thrown against the steering wheel and windshield before he regained his wind, and the fact that the train was still some distance from the crossing, there was ground for the inference that there was ample time for him to have passed over a safe crossing and without negligence in making the effort. A coming train might be within the view of a driver approaching a crossing for several minutes before the arrival of the train there, and it would hardly be contended that reasonable prudence required him to await the passage of a train before undertaking to cross in front of it." (p. 362.)

And it was held that under all the circumstances whether he should have gone forward or awaited the passing of the train was a fair question of fact for the jury. Orr, who lived about twenty-five miles from the crossing and was traveling over a hard-surfaced road, had a right to assume that the crossing was in the condition required by statute, that is, that the railway company had paved "the space between the rails and for a distance of two feet on each side thereof with a pavement of the same or a better type for the

Orr v. Atchison, T. & S. F. Rly. Co.

full width of the pavement on the highway." (R. S. 66-227.) Assuming, as we may, that he saw the train at the distance mentioned before going upon the crossing, he naturally would infer that he had lots of time to go across and be on his way on the other side before the train would reach the crossing. A motorist who races with a train for a crossing on a close margin of time and there follows a collision, resulting in damages, is barred from a recovery because the loss occasioned was his own fault. Under the circumstances of this case, however, we cannot hold the plaintiff was not exercising ordinary care in going upon the crossing. It was at least a fair question for the determination of the jury.

Complaint is made of the fourth instruction given by the court, to the effect that the deceased is presumed to have exercised such care as an ordinarily prudent person would at a railroad crossing, and whether he stopped, looked and listened for the approach of a train is a question of fact for the determination of the jury. We think the defendant has no good reason to complain of the instruction.

There is a complaint of the submission of the rule of the last clear chance. There was testimony to which such an instruction was appropriate, but as the jury based its findings of negligence upon the defective crossing, the instruction is no longer important. In view of the theory upon which the case was decided and the evidence therein, we find no material error in the refusal of the court to send the jury back a second time for more definite answers to some of the special questions. No material error being found in the record the judgment is affirmed.