STEVE PEYLA v. DULUTH, MISSABE & IRON RANGE
RAILROAD COMPANY.[1]

July 28, 1944.

No. 33,870.

[1]Reported in 15 N. W. (2d) 518.

 

*Dennis F. Donovan,* for appellant.

*D. A. Bourgin,* for respondent.

PETERSON, JUSTICE.

Plaintiff brings this action to recover for personal injuries sustained on February 12, 1940, as the result of being hit by a speeder operated by defendant's employes. Plaintiff charges that the accident was caused by the negligence of defendant's employes operating the speeder. The defenses were that the defendant was not negligent and that plaintiff was guilty of contributory negligence and assumption of risk.

Plaintiff, who was employed by the Pickands Mather Company in its underground mine at Ely known as the "Zenith Mine," was injured while crossing from the "dryhouse" on the south side of defendant's tracks (the tracks run upgrade from east to west) to the mine on the north side. The dryhouse is used by the men for changing from their street to work clothes at the beginning of the day's work and back again at the end thereof. Some 200 to 300 men are employed in the mine. They usually work in three eight-hour shifts. Four o'clock in the afternoon was a shift-change time. Because the mine is on the north side and the dryhouse on the south side of the tracks, the men cross the railroad tracks in going back and forth between the dryhouse and the mine to get to and from work.

The dryhouse is some 90 or 150 feet long and runs parallel to the railway tracks. There are four paths leading from the dryhouse across the tracks to the mine. About eight feet distant from the point where the paths intersect the railroad tracks there is a guard-rail and a sign in large letters reading: "Look Out For Cars." The men have used these paths for over 30 years in going back and

forth between the dryhouse and the mine. Plaintiff had been employed in the mine during that period and had so used the paths himself.

The accident occurred just before the four o'clock change of shift at about 3:45 in the afternoon. It was a sunshiny winter day. The railroad track was clearly visible for at least half a mile to the east and probably about that distance to the west. Plaintiff had changed his clothes in the dryhouse preparatory to going to work in the mine. He walked on the third path from the east in going from the dryhouse to the guardrail eight feet from the tracks. At that point he made an observation to the west and one to the east. He saw nothing approaching from the west. He saw the speeder with some men on it approaching from the east. It was then at a road about 150 feet distant from plaintiff and was going about eight miles per hour. The road is east of the easternmost path. Plaintiff concluded that he could cross safely and proceeded across the tracks without making a further observation. Just as he was stepping over the north rail the speeder hit him and then dragged him some 95 or 100 feet, inflicting upon him serious personal injuries.

The speeder had slowed down when plaintiff first saw it. It always slowed down or stopped at change-of-shift time when the men were crossing the tracks in going back and forth between the dryhouse and the mine, as they were doing at the time. There was testimony by a witness for plaintiff to the effect that when the speeder was 50 or 60 feet away from plaintiff, who then was between the rails, it had increased its speed to about 20 miles per hour. The increase in the speed upset plaintiff's calculation and made what appeared to him to be a safe crossing to be in fact a dangerous one. If, as plaintiff's testimony shows, the speeder was going eight miles per hour when he first saw it, it would have taken the speeder about 12½ seconds to reach the path on which he was about to cross. If plaintiff had been walking at a speed of three miles per hour, he would have proceeded 4½ feet per second or over 50 feet before the speeder arrived at the path. In that event

(the distance from the guardrail to the north track was 13 feet), he would have been over 35 feet beyond the north rail and safely across when the speeder got to the path. If he had been walking at a speed of only two miles per hour (and there was no proof or reason to believe that it was less than that), he would have walked about 37 or 38 feet and would have been about 24 or 25 feet beyond the tracks when the speeder reached the point where the accident occurred. In either event, plaintiff would have got safely across the tracks without close figuring. At a speed of 20 miles per hour, the speeder was going 30 feet per second. Just how far it had gone from the road, where plaintiff saw it, before attaining that speed does not appear, except that it was going at the accelerated speed when it was 50 or 60 feet distant from him. If it was going 30 feet per second (20 miles per hour) and he walked at a speed of 4½ feet per second (three miles per hour), he would have cleared the tracks by about seven feet. If he was walking at two miles per hour, he would have walked 15 feet and would have cleared the northerly rail by two feet. If the speeder had been going just a little faster than the estimated speed testified to by plaintiff's witness, it would have reached the point of the accident a little sooner. This apparently was the situation; at least the evidence justified the jury in so finding. After all, the testimony as to the rate of speed was only an estimate. The actual rate of speed may have been a little more or less than the estimate by the witness. In any event, the increase of the speed of the speeder upset plaintiff's calculation, based upon his observation when he was at the guardrail, that he had ample time to get safely across, because he was hit, as has been said, just as he stepped over the last or northernmost rail.

Apparently the men on the speeder maintained a lookout as they approached the road, because they slowed down as they approached it. But after they had crossed the road they apparently did not maintain a lookout. After they had accelerated the speed of the speeder, they were seen sitting with their backs toward each other facing north and south. None were looking ahead. They did not

know they had hit plaintiff and were dragging him until a witness "hollered" at them to inform them of the fact and to bring them to a stop.

The defendant did not call as witnesses any of the men who were operating the speeder. Plaintiff had a verdict. Defendant moved for judgment notwithstanding the verdict. The motion was denied, and defendant appeals from the judgment.

The only questions raised on the appeal are whether the evidence sustains a finding of negligence and whether plaintiff was guilty of contributory negligence and assumption of risk as a matter of law. While the speeder is not a train, defendant invokes the rules applicable to the operation of trains. Since no point has been made to the contrary, we shall decide the case under the rules invoked without intimating whether a speeder is governed in all respects by the rules applicable to the operation of trains. See, Henson v. Williamsville, G. & St. L. Ry. Co. 110 Mo. App. 595, 85 S. W. 597, holding that a speeder is not a locomotive.

■ The evidence sustains a finding of negligence. In Erdner v. C. & N. W. Ry. Co. 115 Minn. 392, 132 N. W. 339, we held that where from 50 to 300 people a day were in the habit of using a railroad embankment between two streets as a short cut without objection, so that it was reasonable to anticipate the presence of such pedestrians on the tracks on the embankment, it was the duty of the railroad to use ordinary care in operating its trains to ascertain whether any such were present and to avoid injury to them. See, Annotation, 120 A. L. R. 1084. Defendant in the operation of its speeders took notice of the dangers involved where the men crossed the tracks and of its duty to exercise reasonable care to avoid injury to them. Because of the danger of injury to the men crossing the tracks and its duty to avoid such injuries, defendant had established the custom of slowing down or stopping its speeders where the men crossed to avoid injury to them. This was but a recognition of its legal duty to exercise due care under the circumstances. Here, the men in charge of the speeder apparently intended to observe the custom and to discharge the duty, because

the speeder slowed down at the road before reaching the places where the men crossed. Then, after plaintiff, in view of the reduced speed, had determined that it was safe for him to cross, contrary to the custom of slowing down or stopping and in violation of the duty to exercise due care, the operators of the speeder greatly increased its speed and operated it across the crossing path without a proper lookout to avoid injury to men who might be crossing. In short, by such conduct the operators of the speeder transformed what would have been a safe crossing for plaintiff under the conditions existing when he undertook it into a most dangerous one that might have cost him his life. A jury may well find such conduct to be negligent.

■ In support of the contention that plaintiff was guilty of contributory negligence, defendant invokes the rule that, where a traveler with knowledge crosses in front of an approaching train and miscalculates, he is guilty of contributory negligence. It argues that plaintiff not only took an unwarranted risk, but, in addition, failed to exercise due care for his own safety by not making additional observations as he proceeded across the tracks, notwithstanding his observation at the guardrail eight feet from the track that it was safe to cross. We shall not stop to consider whether the rule is as defendant claims, except to say that it is not always contributory negligence, as a matter of law, for a traveler to cross tracks in front of a train which he sees or hears approaching. Nelson v. N. P. Ry. Co. 119 Minn. 347, 138 N. W. 419; Nettersheim v. C. M. & St. P. Ry. Co. 58 Minn. 10, 59 N. W. 632; 5 Dunnell, Dig. § 8193, note 83.

The rule invoked has no application here. In the instant case, plaintiff exercised his senses to determine whether it was safe for him to cross. He determined in accordance with the facts that it was safe. The crossing was rendered unsafe by defendant's subsequent acts increasing the speed of the speeder and then operating it without maintaining a proper lookout. The rule applicable in such a situation is that, where a person calculates that it is safe to cross the tracks in front of an approaching train, and could

as a matter of fact cross safely unless something occurred to prevent it, and undertakes to cross and a collision occurs which is attributable to some occurrence which hinders or prevents him from getting across the tracks ahead of the train rather than to a miscalculation on his part that it was safe to cross, his attempt to cross in front of the train is not negligence as a matter of law. B. & O. S. W. Ry. Co. v. Keck, 185 Ill. 400, 404, 57 N. E. 197, 198; Orr v. A. T. & S. F. Ry. Co. 119 Kan. 751, 241 P. 437; Bayley v. Eastern R. Co. 125 Mass. 62; Dunham v. Wabash R. Co. 126 Mo. App. 643, 105 S. W. 21; Stearns v. B. & M. R. 75 N. H. 40, 71 A. 21, 21 Ann. Cas. 1166, Annotation, 21 Ann. Cas. 1175; 44 Am. Jur., Railroads, § 535. See, 2 White, Personal Injuries on Railroads, § 1029, notes 24 and 25.

As said in the Dunham case, 126 Mo. App. 647, 105 S. W. 22:

"* * * This is not one of those cases where the traveller seeing an approaching train undertakes a race for the crossing in an endeavor to get there first. This is a case where a traveller * * * correctly decides that he has an abundance of time to clear the crossing and would have done so but for the unexpected happening * * * which was caused by defendant's negligence. * * * It was not a miscalculation of his having time. * * * It ought not, in reason, to be supposed that plaintiff should have considered the unforeseen and unknowable accident which happened * * *."

In the Bayley case, the evidence showed that the intestate approached the railroad tracks with his horse; that when he was about to start across the tracks the gatekeeper began to close the gates, swung his lantern and shouted to him to stop; that he did stop; that then, pursuant to the gatekeeper's admonition to hurry across, he started across in front of an approaching train; and that he was hit by the train before he got across. The court said (125 Mass. 64):

"* * * It was an open question whether Bayley [the intestate] had not calculated with accuracy that he had time to cross the track before the engine reached the crossing, and whether he would

not have crossed in safety but for the outcry of the gate-keeper, calling on him to stop, and whether he used that degree of care which a man of ordinary prudence would use in such a situation, in attempting to cross in the first instance, in stopping at the suggestion of the gate-keeper, and in starting again at his invitation."

See, Watson v. Minneapolis St. Ry. Co. 53 Minn. 551, 55 N. W. 742.

It seems to be well settled that where the plaintiff has made a reasonable observation and concluded from the facts made known to him as a result thereof that it was safe for him to proceed across the path of an approaching vehicle operated by the defendant, and that observation was upset by the act of the defendant in introducing danger where none existed before by increasing the speed of the vehicle, defendant's negligence and plaintiff's contributory negligence are fact questions for the jury. O'Donnell v. Market St. Ry. Co. 30 Cal. App. (2d) 630, 86 P. (2d) 1077 (streetcar); Sherman v. Ross, 99 Colo. 354, 62 P. (2d) 1151 (automobile); Byram v. East St. Louis Ry. Co. (Mo. App.) 39 S. W. (2d) 376 (streetcar); Walsh v. Feinstein, 251 Mass. 109, 146 N. E. 355 (automobile); Letterman v. Miller, 209 N. C. 709, 184 S. E. 525 (automobile); 3 Berry, Automobiles (7 ed.) §§ 3.206 and 3.218, and cases cited; 4 *Id.* § 413, and cases cited. Increasing the speed of the speeder under the circumstances here was no different in principle from increasing the speed of the streetcars and automobiles in the authorities cited, and may be held to be negligence for the same reasons.

Here, plaintiff correctly determined that he had an abundance of time to clear the crossing and would have done so but for defendant's negligence in accelerating the speed of the speeder and then operating it without maintaining a lookout. Defendant's negligence after plaintiff started across made the act of crossing dangerous.

Plaintiff was not guilty of contributory negligence as a matter of law because of the fact that he did not look more than once. In cases of this kind we should always keep in mind Mr. Justice Mitchell's observation in the similar case of Fonda v. St. Paul City

Ry. Co. 71 Minn. 438, 445, 74 N. W. 166, 168, 70 A. S. R. 341, where plaintiff crossed a street in front of two streetcars approaching from opposite directions:

"The strongest argument that can be advanced against the plaintiff's conduct is that he did not continue to watch the west-bound car after he left the curb to cross Seventh street. But it must be remembered that the distance he had to travel was very short, and would occupy only a very few seconds."

We there held that the evidence made plaintiff's contributory negligence, a fact question. Here, the distance from the point of observation to the tracks was eight feet, about three steps, and from that point across the tracks was 13 feet, about five or six steps. In any view, he took only a few steps after making the observation that it was safe to cross before he was hit.

The rule is well settled that plaintiff's contributory negligence is not to be determined by whether he looked more than once or by the number of times he looked. The question is, did plaintiff exercise due care for his own safety? Where he has looked and it appeared safe to cross, the question then is whether crossing without looking again was reasonable under the circumstances. Stearns v. B. & M. R. 75 N. H. 40, 71 A. 21, 21 Ann. Cas. 1166. We have applied the rule in cases of pedestrians crossing in front of automobiles and streetcars and of automobiles crossing in front of streetcars. In Reier v. Hart, 202 Minn. 154, 157, 277 N. W. 405, 406, where the court below granted judgment notwithstanding the verdict because plaintiff failed to look a second time to the right when he left the curb and held the failure to look more than once to be contributory negligence as a matter of law, we said:

"* * * In this the court erred. The law has not fixed any hard and fast standard defining the duties of pedestrians crossing streets. Negligence of a pedestrian is not determined by the number of times he looked. The law does not say how often he must look or when or from where. If observation is made before entering the street, failure to look the second time while crossing the

street is not necessarily contributory negligence as a matter of law."

The rule was recently applied in Kraus v. Saffert, 208 Minn. 220, 293 N. W. 253.

The rule is also applied in streetcar collision cases. Yien Tsiang v. Minneapolis St. Ry. Co. 213 Minn. 21, 4 N. W. (2d) 630. "If he [the traveler] looks and sees a car approaching at such a distance that he can apparently cross with safety he is not, as a matter of law, guilty of contributory negligence if he attempts to cross without looking again." 6 Dunnell, Dig. § 9026, and cases cited in note 49.

■ What we have said concerning contributory negligence also disposes of defendant's contention that plaintiff was guilty of assumption of risk. In other than master and servant cases, assumption of risk is but a phase of contributory negligence. Schroepfer v. City of Sleepy Eye, 215 Minn. 525, 10 N. W. (2d) 398. No master-and-servant relationship existed between plaintiff and defendant.

Under the circumstances, the question of plaintiff's contributory negligence was one of fact for the jury. Therefore the jury's finding should stand.

Affirmed.