## JAMES M. WEBSTER v. ST. PAUL CITY RAILWAY COMPANY AND ANOTHER.[1]

April 2, 1954.

No. 36,031.

---

[1]Reported in 64 N. W. (2d) 82.

*Ray G. Moonan* and *Frank X. Cronan,* for appellants.
*Robins, Davis & Lyons* and *Harding A. Orren,* for respondent.

FRANK T. GALLAGHER, JUSTICE.

This is an action for personal injuries suffered by plaintiff when he was struck by a streetcar operated by defendants. A verdict was returned for plaintiff by a jury in district court. Defendants appealed from the order denying their alternative motion for judgment notwithstanding the verdict or for a new trial.

About 10:30 on the evening of May 26, 1950, according to plaintiff, he parked the truck he was driving at the north curb of University avenue in St. Paul at a point some 200 feet east of the intersection of University avenue and Kent street. He intended to cross to the south side of University avenue but chose to do so in the middle of the block rather than walking to the Kent street intersection where traffic was controlled by semaphores. At the point where he intended to cross, University avenue is about 98 feet from curb to curb. The center of the avenue is occupied by two sets of streetcar tracks, which at the time of the accident were flanked by concrete safety

islands running the full length of the block. Plaintiff walked the 36 feet between the north curb and the north safety island without mishap. He then began to cross the area between the north and south safety islands occupied by the streetcar tracks, a distance of about 20 feet. According to his own testimony, just before he left the north island, he looked to his left and then to his right. He claims that at that time he observed that defendants' streetcar and several automobiles were awaiting the change of the signal light at the Kent street intersection so that they could continue east on University avenue. At a point between the south set of tracks, about 17 feet from the north safety island, plaintiff was struck by the eastbound streetcar and received the injuries for which he obtained a verdict in district court. He admits that after leaving the north island he did not look to his right again until the streetcar was about ten feet from him. He claims that he attempted but was unable to get out of the way before he was struck.

■ On this appeal, defendants contend that a verdict should have been directed in their favor, since the evidence demonstrated that plaintiff was guilty of contributory negligence as a matter of law and failed to show any negligence on the part of defendants. In considering these contentions, it is well settled that we must uphold the verdict of the jury unless we find it to be manifestly and palpably contrary to the evidence as a whole. Robinson v. Butler, 234 Minn. 252, 48 N. W. (2d) 169; Dahlgren v. Olson, 228 Minn. 379, 37 N. W. (2d) 438; 1 Dunnell, Dig. (3 ed.) § 415, and cases cited. In determining whether this standard has been met, we must view the evidence in the light most favorable to the verdict (1 Dunnell, Dig. [3 ed.] § 415b) and must draw every reasonable inference in support of the verdict. Moore v. Kujath, 225 Minn. 107, 29 N. W. (2d) 883, 175 A. L. R. 1007.

■ Defendants first contend that plaintiff was contributorily negligent as a matter of law for failing to maintain a proper lookout for approaching traffic. As we view the record, this contention is most strongly supported by the following testimony of plaintiff under cross-examination:

"Q. * * * Now as you walked across from the northerly safety isle to the southerly safety isle did you look at any time to your right for this eastbound traffic which was coming in your direction?

"A. Just when I was on the safety isle.

"Q. Just when you were on the northerly safety isle. So you want this jury to understand that you didn't look at any time to your right from the time you left the northerly safety isle until the accident happened?

"A. Until the streetcar was about ten feet from me?

"Q. Until the streetcar was about ten feet from you. And I believe you testified when the streetcar was about ten feet from you you were in between the two southerly rails?

"A. That is right."

On a number of occasions this court has held that the failure of a pedestrian crossing a street to look more than once for approaching traffic does not establish his contributory negligence as a matter of law. Peyla v. Duluth, M. & I. R. R. Co. 218 Minn. 196, 15 N. W. (2d) 518, 154 A. L. R. 505; Reier v. Hart, 202 Minn. 154, 277 N. W. 405; Plante v. Pulaski, 186 Minn. 280, 243 N. W. 64; Quinn v. Heidman, 157 Minn. 129, 195 N. W. 774.

In Reier v. Hart, 202 Minn. 154, 157, 277 N. W. 405, 406, this court said:

"The court below granted judgment notwithstanding the verdict because plaintiff failed to look a *second* time to the right at the time he left the curb and held this to be contributory negligence as a matter of law. In this the court erred. The law has not fixed any hard and fast standard defining the duties of pedestrians crossing streets. Negligence of a pedestrian is not determined by the number of times he looked. The law does not say how often he must look or when or from where. If observation is made before entering the street, failure to look the second time while crossing the street is not necessarily contributory negligence as a matter of law. [Citing cases.] * * * A pedestrian is not required to look continuously in any particular direction. [Citing cases.]"

We must therefore consider whether the evidence compels the conclusion that under the circumstances here plaintiff failed to take the precautions to insure his own safety that a reasonably prudent man would have taken under similar circumstances. 4 Dunnell, Dig. & Supp. § 7012.

3. Although the question of the contributory negligence of plaintiff is a close one in the instant case, we are still confronted with the well-known rule that it is only in the clearest of cases, when the facts are undisputed and it is plain that all reasonable persons can draw but one conclusion from them, that the question of contributory negligence becomes one of law. Campion v. City of Rochester, 202 Minn. 136, 277 N. W. 422; Eichhorn v. Lundin, 172 Minn. 591, 216 N. W. 537; Coffman v. Kummer, 179 Minn. 120, 228 N. W. 751.

Plaintiff testified that, when he looked to the right from his position on the north safety island, defendants' streetcar was stopped for a red light signal at the west side of the Kent street intersection, a distance of about 230 feet from where he was struck. The distance between the north and south safety islands was about 20 feet. He said that he walked at a normal walking speed when he left the north safety island. He was struck by the streetcar after he had gone about 17 feet, before reaching the south island. If the situation was as plaintiff claims, it seems reasonable that he was justified in attempting to cross to the other isle, as he had the right to conduct himself on the assumption that the streetcar would not be operated at a speed greater than was reasonable under the circumstances. Peyla v. Duluth, M. & I. R. R. Co. 218 Minn. 196, 15 N. W. (2d) 518, 154 A. L. R. 505; Day v. Duluth St. Ry. Co. 121 Minn. 445, 141 N. W. 795; Bodin v. Duluth St. Ry. Co. 117 Minn. 513, 136 N. W. 302. The maximum lawful speed even in the absence of unusual circumstances was 30 miles per hour at the point of the accident. M. S. A. 169.14, subd. 2.

In Peyla v. Duluth, M. & I. R. R. Co. *supra*, plaintiff, a workman, made an observation before starting across defendant railroad company's tracks at a point on defendant's premises where hundreds of

workmen crossed daily. At the time he looked, it appeared to him that it was safe to cross the tracks in front of a speeder operated by defendant's employees. In that case there was evidence, not present here, that, after he started, but before he got across, defendant's employees greatly increased the speed of the vehicle contrary to a custom to slow down or stop at the crossing place. In that case this court said (218 Minn. 203, 15 N. W. [2d] 522):

"It seems to be well settled that where the plaintiff has made a reasonable observation and concluded from the facts made known to him as a result thereof that it was safe for him to proceed across the path of an approaching vehicle operated by the defendant, and that observation was upset by the act of the defendant in introducing danger where none existed before by increasing the speed of the vehicle, defendant's negligence and plaintiff's contributory negligence are fact questions for the jury. [Citing cases.] Increasing the speed of the speeder under the circumstances here was no different in principle from increasing the speed of the streetcars and automobiles in the authorities cited, and may be held to be negligence for the same reasons.

"Here, plaintiff correctly determined that he had an abundance of time to clear the crossing and would have done so but for defendant's negligence in accelerating the speed of the speeder and then operating it without maintaining a lookout. Defendant's negligence after plaintiff started across made the act of crossing dangerous."

If, as plaintiff said, the streetcar was at a full stop about 230 feet away when he attempted to cross between the islands, he would have reason to believe that he normally could walk the distance of 20 feet before the streetcar could start from a dead stop and travel 230 feet. If his testimony is to be accepted, we cannot conclude that his failure to look again or reappraise the situation after leaving the north island was contributory negligence as a matter of law.

The record contains no testimony in conflict with plaintiff's estimate that the streetcar was standing 230 feet away when he stepped off the safety island. The streetcar motorman testified that he first saw plaintiff when the streetcar was about 40 feet from him but that

plaintiff then was already between the south set of tracks. He makes no claim that he saw plaintiff step off the island. The driver of an automobile traveling almost abreast of the streetcar at the time of the accident testified that he saw someone (plaintiff) standing between the south tracks when he was from 100 to 120 feet away and that the light was sufficiently good for him to observe a human being at that distance. He did not claim to have seen plaintiff leave the north island.

It may be argued that plaintiff's estimate of the comparative distances which he and the streetcar had to cover to reach the point of the accident at the same time would require the streetcar to have traveled at an almost incredible rate of speed. Since the fact remains that the streetcar did cover the intervening distance, this argument leads to the assumption that either the streetcar must have been less than 230 feet away when plaintiff left the island or that for some reason plaintiff must have delayed in crossing to the south safety island. However, even if we reject plaintiff's estimate of the location of the streetcar in favor of either of these assumptions, we still cannot say, under the facts and circumstances here, that he was guilty of contributory negligence as a matter of law. Whether his conduct was negligent, even in view of these assumptions, depends on how close the streetcar was when he left the safety island and how long, if at all, he delayed in crossing the streetcar tracks. Defendants' evidence clearly does not conclusively determine either of these questions. The burden of proving the contributory negligence of plaintiff by a fair preponderance of evidence was on defendants. 4 Dunnell, Dig. & Supp. § 7032, and cases cited. While a jury could have disregarded plaintiff's story as to where the streetcar was when he started to cross from the north island, the matter of his contributory negligence was still a fact question for the jury. We cannot say under the record here that the facts were so undisputed that reasonable persons could draw but one conclusion and thus hold him guilty of contributory negligence as a matter of law.

■ Defendants also argue that, since plaintiff was not on a crosswalk, his failure to yield the right of way to the streetcar consti-

tuted negligence per se and precluded his recovery. The rule is well settled that failure to yield the right of way is not negligence per se but only prima facie evidence of negligence. M. S. A. 169.96. Plaintiff contends that he had no reason to yield the right of way because the streetcar was so far away when he started to cross from the north island. Where the evidence is conflicting, the issue is for the jury. Pettit v. Lifson, 238 Minn. 349, 57 N. W. (2d) 34; Saunders v. Yellow Cab Corp. 182 Minn. 62, 233 N. W. 599.

■ Defendants on oral argument cite Metz v. St. Paul City Ry. Co. 88 Minn. 48, 92 N. W. 502, and strongly urge that it supports their position. While there is some similarity in the facts, we feel that that case is not controlling in view of the substantially different circumstances surrounding the accident in the Metz case. There, plaintiff was found guilty of contributory negligence as a matter of law for crossing in front of one of the old-style streetcars, which the court assumed upon review was moving very rapidly and making considerable noise which was easily distinguishable at the time. Plaintiff, in going forward after he had looked toward the approaching headlight which was burning brightly, did not look again in that direction. In the instant case, plaintiff was struck by one of the new-style streetcars which moved much more quietly than the old cars, and he testified that the car was standing still waiting for a red light at the time he determined that it was safe to cross in front of it.

■ While defendants might have been justified in arguing that the evidence as to excessive speed of the streetcar was insufficient to warrant a finding to that effect it is our opinion that the questions whether the motorman had maintained a proper lookout and whether he had made a reasonable effort to stop the car after he saw plaintiff on the tracks were for the jury.

The jury could have found that the motorman was negligent in failing to maintain a proper lookout. Wright v. Minneapolis St. Ry. Co. 222 Minn. 105, 23 N. W. (2d) 347; Heiden v. Minneapolis St. Ry. Co. 154 Minn. 102, 191 N. W. 254. By his own admission, he first saw plaintiff when he was only 40 feet from him. Although the accident occurred at night, the evidence indicated that the streetcar

headlight was in good order and functioning and that the street was lighted. In contrast to the motorman, the driver of the automobile approximately abreast of the streetcar immediately prior to the accident testified that he saw plaintiff at a distance of from 100 to 120 feet and that it was obvious at that distance that there was a human being in the street.

Also, by his own admission, the motorman applied only one of the three braking mechanisms available for stopping a streetcar when he first became aware of plaintiff on the tracks 40 feet away. Not until he was ten feet from plaintiff did he apply the brakes to the fullest extent possible. His explanation is that he was sounding the warning devices and assumed that plaintiff would get out of the way. It appears to us that this conduct alone could support the conclusion that the motorman failed under the circumstances to take reasonable precautions to assure the safety of plaintiff.

Affirmed.