No. 13,678.

SHERMAN ET AL. *v.* ROSS.
(62 P. [2d] 1151)

Decided November 23, 1936.

Messrs. McComb & Green, Mr. Walter E. Schwed, for plaintiffs in error.

Messrs. Pershing, Nye, Bosworth & Dick, Mr. Clyde C. Dawson, Jr., for defendant in error.

356

*En Banc.*

Mr. Justice Young delivered the opinion of the court.

This is an action for damages for personal injuries alleged to have resulted from the negligence of the driver of an automobile. Judgment was for the plaintiff.

Plaintiffs in error, who were defendants below, are husband and wife. February 25, 1930, the wife was driving a car belonging to the husband, which, plaintiff alleges, she so negligently operated at said time that it ran into and injured him as is particularly set forth in the complaint. Defendants deny negligence, and plead contributory negligence on the part of plaintiff, and unavoidable accident. Plaintiff denies contributory negligence on his part.

The accident occurred at the intersection of 14th avenue and Steele street in the city of Denver. Plaintiff was crossing 14th avenue on the westerly side of Steele street in a northerly direction. The version of the accident as given by eye-witnesses is brief and we quote the testimony from the abstract of record as follows: Mrs. Sherman: ''I was headed for Logan and 11th avenue. It was around twelve-thirty or twenty minutes to one, a clear, dry day. There was nothing at all to obstruct my view. I observed Mr. Ross on the curbing before he stepped off. I watched him all the time. I could see him clearly. I observed he was an elderly man; that is why I honked only once, so as not to startle him, because I knew he was not aware I was on the street. He was apparently confused. I judged that from the way he jumped forward and back, but that was when I was close to him. What attracted my attention was that he stepped off the curb without looking in either direction, and he was confused after I honked the horn and wanted to look in both directions. I started slowing from the alley. I honked just before I reached the east side of the intersection, and I slowed down further then. I started slow-

ing down from the alley. I would not say that I stopped the car absolutely, but I came to a very slow rate of speed reaching the crossing. Q. Now, you testify that you did not quite come to a dead stop? A. No. Q. At the time you came to a stop where was Mr. Ross? A. He was, I would say, in the middle of the intersection of the west crossing. He was to my left. After I had honked he jumped forward and back, and I was slowing from there, and when I realized that he had apparently made up his mind to stay there, then I gathered more momentum. Q. Why did you assume that he had made up his mind to stay there? A. Well, he had been jumping forward and back hurriedly, and came to a temporary stop, and from his actions I supposed he intended to stay there. I swung my car slowly to the right towards the curb. Mr. Ross jumped in front of my car. I don't know what portion of the car struck him. If anything hit him it probably was the right fender, because he was so far over. He was hit. I had my eyes on Mr. Ross from the time of the alley. I had done all that I possibly could to avoid him.''

Plaintiff Ross: ''I started across 14th avenue and got right in the middle of the street and a car was passing behind me when I saw this lady, Mrs. Sherman, coming west on 14th avenue, and she got about the middle of Steele street while I was still standing in the middle of 14th avenue, and she stopped, and when she stopped I supposed she was going to let me pass, and I started on as fast as I could go. Q. Before you stepped down from the curbing on the southerly side of 14th avenue, did you look to the right and to the left? A. I always do. I looked to the right on that occasion.'' On cross-examination plaintiff stated that he was 73 years old at the time of trial; that he looked both ways before stepping off the curb; that he saw the car that Mrs. Sherman was driving before he stepped off the curb and saw her car come to a stop.

The testimony of Kenneth C. Sawyer a witness for the defendant, as abstracted, was as follows: ''I remem-

ber an accident on East 14th avenue and Steele street about February 25, 1930. At the time the accident occurred I was in an automobile going east on 14th avenue. I saw an elderly gentleman crossing the street going from the south side of the street to the north side, and the car was approaching from the east at a very slow rate of speed, and this car coming from the east hit the gentleman. I saw the man get hit. The man went toward the curb, the north curb, and then turned around and started back in the other direction and stopped, and the car hit him. He almost made the north curb and then started back. The right front fender hit him.'' Cross examination: ''At the time of the accident we were just past the alley about half way in the block on the westerly side of Steele street. The car approaching from the east did not stop prior to the time plaintiff was hit. The gentleman who was struck stopped twice, the first time close to the curb and the second time out a little closer to the middle of the street. When I say he stopped the first time crossing to the curb I mean the north curb of 14th avenue. He was crossing from the south to the north.''

The facts as above detailed present the simple problem present in practically every suit based on negligence, namely, whether there was negligence on the part of defendant that proximately caused the injury, and if so whether there was contributory negligence on the part of the plaintiff. The solution of this problem was for the jury, they resolved it in the plaintiff's favor, and their verdict stands unless there was prejudicial error in the giving of certain court instructions and in the refusal to give other tendered instructions. Neither the instructions given, nor those tendered, are commendable for clarity of statement or indicative of a clear conception of the issues involved.

Defendants' tendered instruction No. 1 was on unavoidable accident. While it was substantially a correct and clear statement of the law, its refusal was not

prejudicial, for the court did instruct the jury, that plaintiff charged that defendant Elizabeth Sherman so negligently operated her car as to run it into plaintiff and injure him; that defendants denied such negligence; that this was one of the issues and that plaintiff must prove by a preponderance of the evidence all of the material allegations of his complaint. If the jury followed these instructions it could not, under any circumstances, have returned a verdict for plaintiff which would violate the rights of defendants under an instruction of unavoidable accident. The language of the supreme court of Vermont in *Larrow v. Martell*, 92 Vt. 435, 104 Atl. 826, is pertinent here: "It is said, however, that the court should have gone further and instructed the jury with reference to the law of unavoidable accidents. But the law of such accidents was, as to the defendant, involved in the instruction given, that in order to recover the plaintiff must show negligence on the part of the defendant, and failing this, the verdict must be for defendant. This eliminated the possibility of a recovery if the jury should find an unavoidable accident, and the exception is without merit."

Tendered instructions Nos. 2, 4 and 10 were upon the subject of contributory negligence, which was defined in instruction No. 5 given by the court, and to which no objection was made. The requested instructions added nothing to that given by the court and the contention that the failure to give them constituted prejudicial error is without merit.

Tendered instruction No. 3 deals with conduct under stress of a sudden emergency. Defendant Elizabeth Sherman testified that she was watching plaintiff for half a block and saw he was oblivious of danger, but that later he was greatly confused. No sudden emergency is shown by the record, so far as she is concerned, and it was not error to refuse an instruction on a situation not shown by the evidence to exist.

Tendered instruction No. 5 was to the effect that

plaintiff having recently called a physician to examine him, and having failed to call such physician as a witness, the jury might infer that his testimony, if he had been called, would have been unfavorable to plaintiff. We have a statute making communications between physician and patient privileged. C. L. 1921, §6563. The giving of instructions of this character would result in a prospective litigant either refraining from seeking medical advice or, if he engaged in litigation thereafter, compel him to surrender the privilege that the statute gives him or suffer the penalty of having the jury assume that the doctor's testimony, if given, would be unfavorable to him.

■ Tendered instruction No. 6 is to the effect that a pedestrian is not absolved from exercising ordinary care for his own safety. Instruction No. 5 given by the court tells the jury that a failure to exercise the degree of care for his own safety justly demanded by the circumstances, if such failure contributed to the injury, would bar plaintiff's recovery. We think this in substance is all that is contained in tendered instruction 6, and that in the light of the given instruction it was not error to refuse the request.

■ Tendered instruction No. 7 deals with circumstances antecedent to those existing at the time of the injury. In the former opinion of the court in this case, *Ross v. Sherman*, 95 Colo. 346, 35 P. (2d) 1014, we used words equally applicable here: "The problem may be said to be simple. Analysis should make it clear. The early maneuvering of the actors, so much stressed in argument, is mainly void of importance. It all took place before the time when they were at a standstill, and out of which nothing untoward eventuated." It was not error to refuse tendered instruction 7 under the facts of this case.

■ Tendered instruction No. 8 with reference to a pedestrian maintaining a lookout before attempting to cross a street, if a correct statement of the law, is not applicable here. The accident occurred after the plain-

tiff became aware of the approach of defendant's car and after defendant became aware of plaintiff's position and confusion, and at a time when she had her car under full control. Conduct of either party prior to the time that each became fully cognizant of the other's position and the surrounding circumstances and when either had it within his or her power to prevent the accident, is too remote to be considered as the proximate cause of, or as a directly contributing cause to, the injury.

Tendered instruction No. 9 is to the effect that a driver of an automobile may assume that a pedestrian warned of a car's approach "will not without exercising reasonable care change his position so as to introduce danger where none existed before." We fail to see why it is material whether one exercises reasonable care or not in changing from a safe to a dangerous position. It would appear that so doing ordinarily would be evidence of a lack of reasonable care. In any event, having seen that plaintiff was old and confused and acting erratically, the defendant was not entitled to the benefit of such an assumption. The refusal of this tendered instruction was not error.

Counsel for defendants objected to the giving of instruction No. 4. The court first defined negligence in its objective sense, as "the failure to observe, *for the protection of the interests and safety of others,* that degree of care, precaution and vigilance which the circumstances justly demand, whereby such other person suffers injury." This is not a general definition of negligence. A general definition would include also the failure to exercise that degree of care *for one's own safety* that the circumstances justly demand. The condition that another person shall suffer injury by reason of the negligence is no element of negligence, but it is an element of *actionable negligence.* The definition given is, strictly speaking, a definition, not of negligence itself, but of the narrower term of *actionable negligence.* Since the actionable negligence of defendant is all that is involved

in the case and since defendants made no objection to this part of the instruction we think the definition was sufficient. In the light of the definition given the court was technically and logically correct in advising the jury that while the same degree of care was required of the driver and of the pedestrian, the amount of care exacted by law of the driver is far greater than the amount exacted of the pedestrian. That the court was advising the jury in the light of his definition, not of negligence in general but of actionable negligence only, is indicated by the two following statements: ''It is within the power of the automobile to inflict injury or death [on the pedestrian]. Such is not the power of the pedestrian [on the driver of the automobile].'' The defendants strenuously object to the part of the instruction which follows, to the effect that the law requires that the driver of the vehicle shall not only give reasonable warning of his approach, but also use every reasonable precaution to insure safety, and that if the defendant Elizabeth Sherman failed to use every reasonable precaution to insure the safety of the plaintiff the verdict, failing a finding of contributory negligence, should be for plaintiff. As a statement of a general principle of law the instruction is misleading. But we think in the light of the particular facts of this case the giving of it did not constitute prejudicial error. The case, as regards negligence or its absence, depended on the testimony of three persons, plaintiff and defendant and one other witness. Defendant testified that she sounded her horn, giving warning of her approach, and no witness denied that she did so. That the jury were instructed, even though it may be as defendants contend, erroneously, that the driver must do a thing that all the testimony is to the effect she did do with no denial of it, could not prejudice defendants. That such was the purport of the instruction is indicated by its phraseology for the wording is that ''he [the driver] shall *not only* give reasonable warning of his approach but use every reasonable pre-

caution to insure safety," and that a failure to do so entitled the plaintiff to recover, unless the jury also found contributory negligence on the part of plaintiff. We think that the words "every reasonable precaution to insure [plaintiff's] safety," under the circumstances of this case, could not have misled the jury. The common phraseology is, "ordinary care to keep from injuring plaintiff," and this means not every possible precaution to prevent injury, but only every reasonable precaution under the circumstances. Nor do we think the word "insure" as used in the instruction is used in its technical sense of, "to guarantee or make absolutely certain," or that as used it carries that implication. There is a vast difference between the statement, that defendant has a duty to insure plaintiff's safety, and the statement, that there is a duty to use every reasonable precaution to do so. The first leaves no excuse for the failure of a certain result. The second does not specify that any certain result shall follow from the precautions taken. We think the word as here used implies a contingency, namely, making the safety of the plaintiff, not absolutely sure, but as sure as reasonable precaution will make it. We have no doubt that the jury so understood it.

The defendants object to instruction No. 7 given by the court because it says that a higher degree of care is required of the driver than of the pedestrian. A better and clearer statement of the law would have been that it required a greater amount of care on the part of the driver to amount to ordinary care toward the pedestrian than the amount required of the pedestrian to amount to ordinary care toward the driver. Technically speaking, the degree of care remains constant and the amount of care required to constitute a certain degree of care varies with the circumstances under which it is to be exercised. If the jury had been advised as to the varying degrees of care such, for example, as ordinary care, extraordinary care, and the care required of

carriers of passengers, a confusion might result from the use of the words "higher degree," but to them, as laymen, the distinction between degree of care and amount of care would not be apparent. To a layman, exercising a greater amount of care or a greater degree of care, means being more careful. The instruction so construed means no more than that the driver of an automobile who can injure the pedestrian must be more careful than the pedestrian who has very little prospect of injuring the driver. We think this is the law.

The defendants also object to the inclusion in instruction No. 9, which sets out the measure of damages, of the following as one of the matters for the consideration of the jury: "And the fact, if it be a fact, that he will thereby be required to incur additional expenses of the same character in the future." In view of the general instructions, that the burden was on the plaintiff to prove all the material allegations of his complaint, and that the jury should award compensation only for actual damages sustained, we think the statement objected to, qualified as it was by the condition, "if it be a fact," was not prejudicial.

The judgment is affirmed.

MR. JUSTICE HOLLAND dissents.

MR. JUSTICE BURKE, sitting for MR. CHIEF JUSTICE CAMPBELL, who did not participate. MR. JUSTICE BUTLER not participating.